(No. 30603.—■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALVIN GENE SCOTT, Plaintiff in Error.

*Opinion filed September 24, 1948.*

ROBERT M. WASHBURN, and JOSEPH M. MCCARTHY, both of Centralia, SAMUEL FINN, of Salem, and MAURICE B. JOHNSTON, of Carlyle, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (JOSEPH B. SCHLARMAN, State's Attorney, of Carlyle, of counsel,) for the People.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

The plaintiff in error, Alvin Gene Scott, also called defendant in this opinion, was indicted in the circuit court of Clinton County, charged with taking immoral, improper and indecent liberties with a certain female child of the age of seven years, in violation of section 109 of the Illinois Criminal Code.

He was tried before a jury and found guilty. After motions for a new trial and in arrest of judgment were overruled, he was sentenced to the Illinois Penitentiary for a minimum period of one year and a maximum period of eight years.

The principal contentions of the plaintiff in error in asking a reversal of the judgment and sentence are: (1) that there is no substantial corroboration of the testimony of the prosecuting witness, seven years of age; (2) that the court erred in admitting in evidence the purported confession of the plaintiff in error; (3) that the *corpus delicti* was not proved by competent evidence, and (4) that the court erred in refusing to give two certain instructions offered by the plaintiff in error to the jury.

The prosecuting witness, a female child, was eight years old at the time of trial. She testified that on February 5, 1947, the plaintiff in error lived just across the alley from her own parents. On the evening in question she went over to the Scott home on an errand and stopped for a short time to look at some newspaper comics. That plaintiff in error came into the Scott home and then went out while she was there. Later she left the Scott home and went down a path leading to the alley. When she arrived near the garage, the plaintiff in error called and asked her

to come in the garage. It was then, according to her testimony, that the plaintiff in error committed the offenses charged in the indictment, which were a clear violation of the statute. At the time, she was wearing a coat, and when she arrived home there was something wet on the sleeve. She said that plaintiff in error gave her a dime and told her not to say anything to her mother. The mother of the child corroborated the story of the child concerning the condition of the coat and that she took it to the State's Attorney's office the next morning. The coat was then kept in the custody of the officers and duly delivered to a qualified chemist with the Illinois State Police Laboratory. The latter testified that upon examination he found the substance on the sleeve of the coat to be human semen. The prosecuting witness was thus corroborated in her testimony by her mother and the Illinois State Laboratory expert.

There was also introduced in evidence what purports to be a written confession signed by the plaintiff in error in the presence of the sheriff and his deputy. This paper clearly admits the charge made in the indictment. But the plaintiff in error, a veteran and a young man 20 years of age, insists that the purported confession was procured by promises that if he signed the document he would be given probation; that if he had not been promised probation he would not have signed the confession; that he was also told that if he did not sign the confession, the expense of his defense would break his folks up financially. His statements in this respect are denied by the sheriff and his deputy. A hearing was held before the court out of the presence of the jury as to the admissibility of the purported confession. At that time the plaintiff in error testified that he was arrested on the evening of February 6, 1947; and placed in the county jail; that he was taken to the office of the State's Attorney about 8:30 or 9 o'clock and questioned there until after 2 o'clock the next morning; that

at the end of the examination he went out in the hall with the deputy sheriff who kept telling him he had better get off on probation. He testified that he kept telling them he was not guilty. On the way back to the jail the sheriff and deputy repeated the promises of probation and he finally signed the statement in the dining room of the county jail.

He contends that the alleged confession was procured by fraud, was not a voluntary confession and that the court erred in admitting it in evidence. At the same hearing the sheriff, Alvin Kramer, and his deputy, August Wessel, both testified that on the evening of the arrest the plaintiff in error was taken to the office of the State's Attorney at about 8:00 or 8:30 o'clock P.M., and that they left said office about ten o'clock that same night. The sheriff further testified that after returning to the county jail he told the plaintiff in error that it was best for him to tell the truth and if he was not guilty to say so; that plaintiff in error then said: "I want to get it off my chest —I'll tell everything." The sheriff then asked him: "Why didn't you tell the State's Attorney?" and the defendant replied: "Well, I'll tell everything now." Thereafter they found the State's Attorney, brought him over to the jail where, in the presence of the sheriff and his deputy, defendant recited his story of what had happened. The State's Attorney then wrote out the statement in longhand, asked defendant to look it over and to read it, and notified him that any statement he made might be used against him. Thereupon the defendant signed the statement and the sheriff and his deputy signed the document as witnesses. The execution of the statement occurred about 10:30 or 11:00 o'clock in the evening. The testimony of the deputy sheriff, August Wessel, was in effect the same as that of the sheriff. Both denied having used any force or coercion or of having made any promise of probation in order to secure the signature of the defendant.

After the hearing, the court permitted the State to introduce the same testimony before the jury and admitted the confession in evidence.

"It is a well established rule in this State that a confession, to be admissible in evidence, must be a voluntary statement by the defendant. The question of whether an alleged confession was voluntarily made is essentially one for the trial judge." *People* v. *Ardelean,* 368 Ill. 274; *People* v. *Fox,* 319 Ill. 606.

Here, the trial court, on the matter of promises or inducement, was compelled to believe either the defendant or the witnesses for the prosecution. While the evidence is contradictory on those essential matters, this court will not reverse the decision of the lower court in admitting a confession unless its action is clearly against the manifest weight of the evidence. (*People* v. *Albers,* 360 Ill. 73.) There was ample testimony in this case to show that the confession was voluntary, and the court did not abuse its discretion in allowing it to go to the jury.

The prosecuting witness in this case was corroborated by her mother and the Illinois State Laboratory expert. This evidence, coupled with the confession admitted in evidence, was all submitted to the jury, and it was its province to judge the credibility of the witnesses and the weight of the evidence. (*People* v. *Klemann,* 383 Ill. 236.) Where the evidence is merely conflicting, this court will not substitute its judgment for that of the jury or the trial court. *People* v. *Bolger,* 359 Ill. 58.

We believe there was sufficient testimony in the record to establish the *corpus delicti* and to prove the plaintiff in error guilty beyond all reasonable doubt if there were no other errors committed in the trial of the case.

The claim of plaintiff in error that he was denied his statutory and constitutional rights because he was not immediately arraigned before a magistrate on the evening of his arrest is not well-founded. After a warrant was

duly issued, he was arrested about 6:00 or 6:30 in the evening and the time until 11 o'clock that night was primarily taken up with examination by the officers and the signing of the confession. He was taken to a magistrate early the next day, at which time he was arraigned, bond fixed, and he permitted to make bail. We do not find any unlawful restraint used by the officers such as was used in the cases cited by the defendant. *People* v. *Crabb,* 372 Ill. 347; *People* v. *Vinci,* 295 Ill. 419.

It is further contended that the court erroneously refused to give two instructions offered by the plaintiff in error. The first refused instruction considered the credibility of witnesses and left it to the jury to determine whether or not the material allegations of the indictment had been proved without an instruction defining what such material allegations were. This form of instruction is condemned in the case cited by the plaintiff in error. (*People* v. *Berne,* 384 Ill. 334.) The instruction given on the part of the People, quoting the language of the statute, is not sufficient definition of the material elements of the crime to overcome the objection to this instruction. An instruction which leaves to the jury the determination of what are the material issues in the case is erroneous. *People* v. *Arcabascio,* 395 Ill. 487.

The other refused instruction involved the question of an alibi. The plaintiff in error, his father, mother, sister and brother, all testified that defendant was eating supper in his home when the prosecutrix left the house and that he remained in the home for an hour or so after she left. The offered instruction read as follows: "The Court instructs the Jury that an alibi when sufficiently proven is a good and sufficient defense and if you believe from the evidence that the defendant was at another place than that of the place of the alleged commission of the crime at the time of the alleged offense that an alibi has been sufficiently proven and you should find the defendant not guilty." No

other instruction was offered by the State or the defendant concerning the defense of alibi.

Counsel for the State do not object to the form of this instruction, but dismiss the point with the statement that the matter of alibi was not in question in the evidence and was not one of the essential elements of the defense, but the record evidence above referred to is replete with testimony covering that particular issue. In addition to the direct denial of guilt by the defendant, he sought to account for his presence at some other place than at the scene of the crime. Where a defendant seeks to account for his presence elsewhere than at the scene of crime, an alibi instruction is justified. *People* v. *Yario,* 346 Ill. 233.

We think under the proof, the refusal to give an instruction on the important issue of alibi might have been prejudicial to the defendant. The evidence offered to establish the alibi covered the entire period when the crime was alleged to have been perpetrated. "We are not called upon to judge the weight of the evidence upon this question, as very slight evidence upon a given theory of a case will justify the giving of an instruction." (*People* v. *Matter,* 371 Ill. 333; *People* v. *Papas,* 381 Ill. 90; *People* v. *Grizzel,* 382 Ill. 11.) Plaintiff in error was entitled to have the jury instructed not only as to the law applicable to any state of facts testified to by him, but applicable to any state of facts which the jury might legitimately find from the evidence to have been proved. *People* v. *Scalisi,* 324 Ill. 131; *People* v. *Egan,* 331 Ill. 489; *People* v. *Doody,* 343 Ill. 194.

The court's refusal to instruct the jury on the subject of alibi testimony constituted reversible error. The judgment of the circuit court of Clinton County is, therefore, reversed and the cause remanded.

*Reversed and remanded.*