THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY D. LAKES, Defendant-Appellant.

Second District No. 77-254

Opinion filed May 17, 1978.

Mary Robinson and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of attempted burglary after a jury trial and sentenced to 3 1/3 to 10 years imprisonment. He appeals contending that (1) his privilege against self-incrimination was violated when the trial court failed to suppress a statement which the police obtained from him after he had indicated that he did not want to talk to detectives about the offense in question and (2) the trial court erred in considering pending charges in imposing sentence. We affirm.

The record may be summarized as follows: On February 12, 1976, shortly after midnight, Officer Hendley and Detective Pensala observed the defendant and a second subject in the mail box area outside the front door of an apartment building in Waukegan. The defendant and the other subject, Jerome Lindsey, ran into the interior of the building when the officers drove up, but were arrested at the front door a few minutes later. The officers went through the apartment building, and discovered pry marks on the laundry room door. Later, in searching the building, the officers found a hypodermic needle by the front door where the defendant and Lindsey were apprehended, and a screw driver in the attic, near a door which was adjoining the third floor of the building. Lakes and Lindsey were taken to the Waukegan police station, where the defendant was strip-searched and placed in a cell.

Hendley and Pensala interrogated the defendant at 7:30 the next morning. Pensala advised the defendant of his *Miranda* rights and the defendant indicated that he understood them. The defendant then stated that he had nothing to say and was returned to his cell. Pensala went off duty at approximately 8 a.m. Before going home, he informed Officer Stevenson, who had just come on duty, that the defendant had refused to talk to him.

At 10:30 that morning the defendant was interrogated by Officers Laiben and Stevenson. Laiben advised the defendant of his rights, and the defendant responded that he understood them. The defendant did not initially make any incriminating statements, although Officer Stevenson testified that the defendant never said that he didn't want to make a statement. Instead, the defendant denied that he had committed the offense. The officers then told the defendant of the physical evidence that they had obtained, and stated that they were going to dust the screw driver which they had found in the attic of the apartment building in order to obtain fingerprints. The officers also informed the defendant that Jerome Lindsey had given the police a statement which implicated the defendant. At some point, the defendant signed a "waiver of rights" form and after approximately 15 to 20 minutes, from the time the interrogation was commenced, the defendant made a confession concerning the attempted burglary. The officers reduced the statement to writing and the defendant, after making a few corrections, signed it.

The defendant filed a motion to suppress this statement. The testimony of the defendant in support of this motion was, to a considerable extent, at variance with testimony presented by the State. The defendant claimed that he had requested an attorney after his arrest, but was told that it was too late in the evening to obtain one. He asserted that during the interrogation the next day, he had initially refused to make a statement, and the officers then read a statement which they had obtained from Jerome Lindsey to him, and told him that it would not look good for him to appear before a judge requesting a recognizance bond, when he had failed to admit his guilt. The defendant's testimony on these points was contraverted by that of the police officers, and such issues of fact were resolved against the defendant when the trial court denied his suppression motion.

■■ A person's "right to cut off questioning" is a "critical safeguard," and where the evidence fails to show that the exercise of that right was not "scrupulously honored" by law officers conducting a custodial interrogation, any confession or statement obtained from the suspect after he attempts to terminate the interrogation will be inadmissible. (*Michigan v. Mosley* (1975), 423 U.S. 96, 103, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.) In arguing that the trial court erred in denying his suppression

motion, the defendant asserts that his right to cut off questioning was not "scrupulously honored" since Officers Laiben and Stevenson interrogated him about the robbery at 10:30 in the morning, in spite of the fact that the officers knew that he had declined to make any statement when Officers Hendley and Pensala questioned him about the same offense at 7:30 that morning.

■■ However, the exercise of the right to cut off interrogation by a person undergoing a custodial interrogation is not necessarily an absolute bar to any subsequent request that the individual reconsider his decision not to make a statement. As the court noted in *People v. Brookshaw* (1973), 12 Ill. App. 3d 221, 224, quoting *People v. Gary* (1972), 31 N.Y.2d 68, 70, 286 N.E.2d 263, 264:

> "There is, however, a clear distinction between the continuation, whether by successive agencies or otherwise, of an 'interrogation' * * * and a subsequent request, upon reiteration of the requisite warnings, for reconsideration of an earlier decision to make no statement * * *."

Thus, in *Brookshaw*, it was held that a statement was properly admitted against the defendant, even though he was a juvenile who had refused to give a statement on two prior occasions the night before the interview which resulted in his statement.

■■ We observe that when the defendant here declined to make a statement to Officers Hendley and Pensala, the interrogation immediately ceased, and the defendant was returned to his cell. Three hours later, when Officers Laiben and Stevenson interviewed the defendant, the officers began by carefully explaining each of the defendant's rights. This case did not involve repeated attempts to break down the defendant's will in order to obtain a statement (compare *People v. Gibson* (1977), 55 Ill. App. 3d 929, 371 N.E.2d 341), and we cannot, on this record, hold that the trial judge erred in finding that the institution of the second interview regarding the attempted burglary, three hours after the defendant had declined to give a statement concerning the same offense, did not constitute a *per se* violation of the defendant's right to remain silent.

■■ The defendant has similarly argued that Officers Laiben and Stevenson's "continued interrogation" of him for 15 to 20 minutes after he indicated his desire to refrain from making a statement, also shows that his right to remain silent was not "scrupulously honored." The difficulty in this argument is that the evidence was in conflict as to whether or not the defendant ever stated, during this interview, that he didn't want to make any statement. While the defendant so testified, the testimony of the officers was that the defendant never said that he did not want to give a statement, but merely persisted in denying any part in the commission of

the offense for 15 to 20 minutes after the commencement of the interview. A denial of involvement in or knowledge of a crime is not the equivalent of a demand to terminate questioning, at least within the context of this case here. *Cf. People v. Maxon* (1976), 35 Ill. App. 3d 670.

In sum, the trial court's denial of the defendant's suppression motion was not against the manifest weight of the evidence and, therefore, cannot be disturbed on appeal. To hold that the defendant's refusal to make a statement to Hendley and Pensala, or his initial denial of the commission of the offense when questioned later by Laiben and Stevenson, rendered the defendant permanently immune from further interrogation, regardless of the circumstances, "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Michigan v. Mosley* (1975), 423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 326.

■■ The other issue in this appeal arises out of certain remarks which the trial court made in imposing sentence upon the defendant. The court stated that a "persistent and criminal activity," even after the defendant's arrest on the charge in this case, had been demonstrated. The defendant argues that this can only have been a reference to certain charges that were listed in the probation report and that by so considering the charges, the court violated the general rule that the consideration, at a sentencing hearing, of bare arrests which have not been reduced to conviction, is prohibited. (*E.g., People v. Hampton* (1972), 5 Ill. App. 3d 220.) However, a close examination of the record convinces us that the trial court did not violate this rule. In fact, at one point, in going through the probation report with counsel, defense counsel began to make a comment about the pending charges listed in the report, and the trial judge interjected that "pending [charges] don't count. I usually don't look at those until they enter sentence * * * so it doesn't count." The trial court's remarks about "criminal activity" while the instant case was pending were clearly a reference to two offenses committed after the offense in this case, which the State elected to *nolle pros* and present as evidence in aggravation at the sentencing hearing. This was done through competent testimony, in accordance with the procedure which this court approved in *People v. Davis* (1976), 38 Ill. App. 3d 649, and *People v. Lemke* (1975), 33 Ill. App. 3d 795. While "bare arrests which have not resulted in conviction" are not admissible, evidence of criminal conduct occurring after the offense for which a defendant is being sentenced, when " 'introduced formally with due opportunity for confrontation, cross-examination and rebuttal,' " is not " 'bare evidence of arrests which have not resulted in conviction' " and is properly admissible at a sentencing

hearing. (38 Ill. App. 3d 649, 651.) Thus, it is clear that the trial court did not improperly consider evidence of bare arrests in imposing sentence upon the defendant.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.