THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY JOE CONNELL, Defendant-Appellant.

Fifth District    No. 79-252

Opinion filed November 26, 1980.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant, Larry Joe Connell, was found guilty of retail theft and forgery after a jury trial in the Circuit Court of Madison County. He was sentenced to 364 days' and four years' imprisonment, respectively, the sentences to be served concurrently.

On this appeal defense counsel raises the following issues: (1) Whether the State failed to prove that defendant's statements to police were voluntary, where one officer who witnessed one such statement did not testify at the suppression hearing; (2) whether defendant's right to remain silent was violated, where defendant told police he did not want to answer questions, but police later resumed questioning; and (3) whether the trial court's refusal to have the preliminary hearing transcribed was reversible error. Additionally, defendant has filed his *pro se* brief raising, *inter alia*, the following issues: (1) Whether he was proved guilty of forgery beyond a reasonable doubt, where the proof showed he merely endorsed the document in question, a check issued by the United States Treasury, and where that check was more than 10 months old when he attempted to cash it; and (2) whether the trial court improperly restricted defense counsel's closing argument. We affirm.

The facts are as follows: Defendant entered a Thrifty Drug Store in Alton, Illinois, clad only in "baseball pants." The store manager, Randy Trees, became suspicious because of the long time defendant spent in the store and the scrutiny defendant gave each item he placed in his shopping basket. When defendant approached the checkout station Trees relieved the clerk stationed there. Trees refused to cash the United States Treasury check defendant tendered in payment for the articles. Defendant left the checkout area and returned several items to the shelves, then removed a metal security box from a shelf and unwrapped it. Defendant went to a far corner of the store, sat on the floor, and packed the box with merchandise. At this time Trees called the Alton police. Several officers arrived. Some of the officers entered the store, and one spoke to defendant. The defendant again approached the checkout and paid for a few items, leaving the metal box and a bag in his shopping basket. Officers stationed at the store exit stopped defendant and opened the bag and box, finding various merchandise including socks, toothbrushes, and other items bearing Thrifty price tags.

The following facts appear from the reports of proceedings on

defendant's motion to suppress his statement to police. Though the record indicates defendant was present at those hearings, the only testimony was by three members of the Alton police department and is uncontradicted. After defendant passed the checkout station at the Thrifty store, at about 10:45 a.m., he was confronted just inside the exit by Officer Downey, who was fully uniformed. Three other officers were with Downey, two in full uniform. Mr. Trees, the store manager, was there as well. Downey asked defendant an unspecified question about the merchandise he had not paid for, and defendant replied that he had purchased those items elsewhere. Trees stated the items belonged to the store, and when Thrifty tags were found on the items, Downey arrested defendant. Searching him, the officer found the Treasury check. Defendant was transported to the Alton police station in a marked car driven by Downey. Officer Hubbard was a passenger in the car. During the drive, Downey advised defendant of his *Miranda* rights. At the station, Downey interviewed defendant in the station booking room beginning at about 11:15 a.m. in Officer Hubbard's presence. First, Downey advised defendant of his *Miranda* rights for a second time, and defendant stated that he understood. Downey then asked defendant how he happened to have someone else's Treasury check. Defendant replied that he had received it by mail and was keeping it for a friend. Downey asked a second, unspecified, question, at which point defendant refused to answer any other questions and the interview ended. Downey testified that defendant was of normal appearance and that they had made no promises to him.

The second interview commenced at about 1:50 p.m., and was conducted in the investigators' office of the Alton station by Detective Rynders, who had not theretofore participated in the case. First, Rynders advised defendant per *Miranda* for the third time, defendant stating after each warning that he understood. Sargeant Galloway of the Alton police was present during the *Miranda* admonitions but left the room shortly thereafter. Rynders stated that he was investigating a possible forgery, and he asked defendant an unspecified question about the Treasury check endorsement. Defendant agreed to give a statement. Rynders took notes during the oral statement, then reduced the notes to a typed statement in three copies. Rynders then called Galloway into the room and each man took one copy of the statement. Rynders read it in full, then asked defendant if it was true and if he would sign it. Defendant said it was true, and he signed all three copies.

In his statement at this second interview, which was read to the jury at trial, defendant stated that he had found the Treasury check on a table at the Normal, Illinois, boarding house where he lived. He wrote the payee's name on the back of the check, together with a short note and his

own signature. He attempted to cash the check at the Thrifty store but was refused, and police found the check upon his arrest for shoplifting.

Defendant was seated throughout this interview, which lasted approximately 30 minutes. According to Rynders, defendant never requested an attorney or refused to answer questions. He did not appear to be intoxicated. Rynders and defendant also discussed defendant's enrollment at Illinois State University in Normal.

The State also presented the testimony of a documents examiner, in whose opinion the writing on the back of the Treasury check matched the writing in the exemplars made by defendant after his arrest. Also testifying for the State was the Treasury check payee, who testified defendant had no authority to sign his checks or receive his mail.

Defendant did not testify at trial and presented no evidence.

The first issue we consider is whether the State's failure to have Officer Hubbard testify at the suppression hearings violated the requirement that the State "produce all material witnesses connected with the taking of the statements or explain their absence." (*People v. Armstrong* (1972), 51 Ill. 2d 471, 476, 282 N.E.2d 712.) Only by producing all material witnesses connected with the controverted statement by defendant can the State discharge its burden of proving the voluntariness of that statement. (*Armstrong; People v. Wright* (1962), 24 Ill. 2d 88, 180 N.E.2d 689, *appeal after remand* (1964), 30 Ill. 2d 519, 198 N.E.2d 316.) Defendant has consistently maintained that the State's failure to have Officer Hubbard testify was error, and that the issue was first raised prior to trial. Was Officer Hubbard a "material" witness? In *People v. Sims* (1961), 21 Ill. 2d 425, 173 N.E.2d 494, the court indicated in its discussion of *People v. Scott* (1948), 401 Ill. 80, 81 N.E.2d 426, that the materiality of the witness in question must be determined according to the nature of the coercion alleged by the accused. Thus, in *Scott*, while the State's attorney who elicited the accused's confession did not testify, he was not "material" on the issue of voluntariness since it was not alleged that the State's attorney was present when promises of leniency were allegedly made to defendant to induce him to confess. *Sims*.

■■ Accordingly, we look to the nature of defendant's allegations that his statements were involuntary to determine whether Officer Hubbard's testimony could have been material in light of those allegations. Defendant's written motion to suppress alleged numerous improprieties. However, only one of those allegations was in any way supported by the testimony at the suppression hearing. Defendant alleged that he refused to answer questions in the first interview, and that questioning was later resumed. Testimony by Officers Downey, Rynders, and Galloway confirmed that allegation rather than denying it. Thus there was no controverted issue of fact for the trial court to resolve. The issue confronting the

trial court on defendant's motion to suppress the statements was a question of law, not of fact. Accordingly there was no factual inquiry before the court to which Hubbard's testimony could be considered material. Therefore, it was not necessary that Hubbard testify regarding this issue.

■■■ Regarding numerous remaining allegations in defendant's motion to suppress, we believe it was sufficient that the State presented a *prima facie* case that those allegations were false. For example, while defendant alleged he was not admonished per *Miranda*, the officers' testimony that he was is uncontradicted. Where defendant does not offer any testimony to contradict that of the officers, the trial court may in its discretion accept the officers' testimony as true. (*People v. White* (1974), 22 Ill. App. 3d 180, 317 N.E.2d 323, *aff'd* (1975), 61 Ill. 2d 288, 335 N.E.2d 457.) The testimony of the officers made out a *prima facie* case that the confession was voluntary with respect to those remaining allegations. The burden of proof thus shifted to defendant to present some evidence in support of those allegations to shift the burden of proof back to the State. (*White; People v. Slaughter* (1978), 59 Ill. App. 3d 159, 376 N.E.2d 33.) Here, defendant failed to present some evidence in support of those allegations, which would shift the burden back to the State to prove, not merely a *prima facie* case of voluntariness, but rather proof by a preponderance of the evidence that the statements were voluntary. We have found no cases citing as error the State's failure to produce allegedly material witnesses where no evidence whatsoever had been adduced in support of the defendant's allegations of coercion. Our supreme court has frequently stated the production of material witnesses rule as triggered by defendant's production of some evidence of coercion: "Where the defense produces *evidence* that a confession was obtained by coercion, all the persons who had control over the defendant and are allegedly involved in the use of coercion should be produced, if possible, and examined before the confession is admitted." (Emphasis added.) *People v. LaCoco* (1950), 406 Ill. 303, 94 N.E.2d 178; see *People v. Davis* (1948), 399 Ill. 265, 77 N.E.2d 703; *People v. Wagoner* (1956), 8 Ill. 2d 188, 133 N.E.2d 24; *People v. Jennings* (1957), 11 Ill. 2d 610, 144 N.E.2d 612; *People v. Sammons* (1959), 17 Ill. 2d 316, 161 N.E.2d 322.

■■ Even if we conclude that it was error for the State to fail to produce Officer Hubbard at the suppression hearings, we find the evidence exclusive of defendant's statements to police leaves no doubt of his guilt. Accordingly, error in that regard would not have required reversal in this case. (*People v. Kraus* (1946), 395 Ill. 233, 69 N.E.2d 885.) There was ample occurrence witness testimony regarding the retail theft, and the statements themselves were inculpatory only with respect to the forgery charge. Two occurrence witnesses, Trees and Downey, viewed the

Treasury check in defendant's possession, and a documents examiner was unequivocal in his testimony that defendant's handwriting exemplars matched the writing on the back of the check.

■■ We turn to the second issue raised by defendant, whether his right to remain silent was violated when Rynders questioned him after defendant refused to answer Downey's questions. The State is of course in no better position than if the same officer had conducted both interviews, since we impute knowledge of the prior interview to the officer involved in the later interview. (*People v. White* (1975), 61 Ill. 2d 288, 335 N.E.2d 457.) Defendant argues that the object of resumption of questioning "was to wear down defendant's resistance and coerce him into abandoning his right to remain silent."

■■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28, the United States Supreme Court stated that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." This does not mean, however, that any statement taken after the accused has invoked his privilege is inadmissible as a product of coercion. Rather, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored'." (*Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46 L. Ed. 2d 313, 326, 96 S. Ct. 321, 326.) Neither *Miranda* nor any broader constitutional mandate prohibits the police from making a subsequent request for a statement, as opposed to continued importunity or coercive interrogation. *People v. Brookshaw* (1973), 12 Ill. App. 3d 221, 299 N.E.2d 20.

The following facts indicate to us that defendant merely reconsidered his earlier refusal to speak, rather than that he capitulated to coercive pressure by law enforcement authorities. The officers' testimony that defendant never requested an attorney is uncontradicted, as is their testimony that the first interview lasted only moments and the second interview only 30 minutes. Since Detective Rynders read defendant his rights, took notes, typed a statement from these notes, called in Detective Galloway to witness defendant's approval of the statement, read the statement aloud, and had defendant sign it, all in 30 minutes, it is apparent that defendant readily acceded to Detective Rynders' request. Further, defendant made his statement before a single detective, not before a crowd of men in uniform. The statement was given, not in the dead of night (*People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263), but shortly after midday, and before defendant ever spent a night in

custody. The officers' testimony that defendant was of normal appearance and apparently not intoxicated is uncontradicted. There was no indication that defendant was of less than average intelligence, and the presentence investigation reveals defendant's age is 29 and confirms his college enrollment. It is uncontradicted that defendant was thrice advised per *Miranda*, the last just prior to his statement to Rynders.

Defendant urges as significant that there was no change in the topic of questioning between the first and second interviews in this case. In *Michigan v. Mosley*, cited by defendant, the court noted such a change as significant in affirming the admission of a statement made by defendant at a subsequent interview. We agree with the State, however, that neither *Mosley* nor other authority requires such a change in topic after defendant's initial refusal to answer questions. Statements made after an initial refusal to answer have been held properly admitted despite failure to change the topic of questioning in *People v. Brookshaw* (1973), 12 Ill. App. 3d 221, 299 N.E.2d 20, and *People v. Lakes* (1978), 60 Ill. App. 3d 271, 376 N.E.2d 730.

We have determined that the conclusion of the trial court that the instant statements were voluntarily given was not contrary to the manifest weight of the evidence. (*People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7.) We find no reason to reverse on that basis.

■■ Next, defendant maintains it was reversible error for the trial court to deny defendant's motion to have the preliminary hearing transcribed. Defendant urges that he was thereby prevented from using the transcript of Officer Galloway's testimony at that hearing for impeachment purposes at trial. Defendant does not show or allege any specific inconsistency between Galloway's testimony at the preliminary hearing and his testimony at trial. Neither have we been provided with either an agreed statement of facts or a bystander's report as provided for by Supreme Court Rules 323 and 612 where a verbatim transcript is not available. (Ill. Rev. Stat. 1979, ch. 110A, pars. 323, 612.) Rather, defendant argued in his post-trial motion that the large number of cases set for preliminary hearing that day and involving the same counsel made reconstruction of the proceedings impossible. Thus, defendant asks that we presume prejudice from the court's refusal to order transcription, since the error by its nature rendered a showing of actual prejudice impossible.

We find the same issue decided adversely to defendant in *People v. Lewis* (1976), 37 Ill. App. 3d 870, 346 N.E.2d 377. Defendant concedes that there is no statute or court rule requiring the presence of a court reporter at a preliminary hearing. In absence of even an allegation that Galloway's preliminary hearing differed from his trial testimony in any particular, we view this issue as without merit.

We turn to the issues raised in defendant's *pro se* brief. First,

defendant urges he was not proved guilty of forgery beyond a reasonable doubt, since defendant merely endorsed the Treasury check. Defendant was charged with a violation of section 17—3(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a)(1)). That section provides that a person commits forgery when, with intent to defraud, he knowingly "[m]akes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority * * *." Defendant was charged by information with having "made" the document "in that it purported to have been made by another, David G. Anderson [the payee]." Photocopies of the front and back of the check were attached to the final information and purportedly made a part thereof by reference. Anderson's name appears on the check only in type on the front as payee and in handwriting on the back as endorser. Prior to trial, defense counsel moved to dismiss the information on the ground that it charged defendant with making the check, not endorsing it. That motion was denied. Later, the State's motion to prevent defendant from arguing to the jury that an endorsement was not a "making" was granted.

■■ We believe the proof that defendant endorsed the check in Anderson's name was as a matter of law sufficient proof of a "making" of the check. It has been held, and we agree, that in the context of the forgery statute "makes" includes "endorses." (*People v. Addison* (1966), 75 Ill. App. 2d 358, 220 N.E.2d 511.) Without endorsement, the check could not be cashed. Accordingly, we believe that proof that defendant endorsed the check was sufficient proof that he "made" it. For the same reason, the trial court properly denied defendant's motion to dismiss the forgery charge on that ground. Also it was not error for the trial court to prohibit defense counsel from arguing to the jury that an endorsement was not a "making" within the forgery statute. The issue was one of statutory construction, and as such was a question of law for the court to decide. (*People v. Bruner* (1931), 343 Ill. 146, 175 N.E. 400.) An argument by defendant that the instant endorsement was not a "making" would have misstated the law on the subject and as such would not have been proper closing argument.

■■ Defendant further contests the sufficiency of the evidence of his guilt of forgery on the ground that the Treasury check was not "apparently capable of defrauding another" (Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a)(1)) because he attempted to cash the check some 10 months after it was issued. Defendant urges that under the Uniform Commercial Code one who takes a check more than 30 days after it is drawn is presumed to have notice that the check is overdue. (Ill. Rev. Stat. 1979, ch. 26, par. 3—304(3)(c).) However, the fact that the check may have

been overdue was relevant only to the drawer's right to refuse payment on the check. (See *People v. Marks* (1965), 63 Ill. App. 2d 384, 211 N.E.2d 548; *People v. Adams* (1921), 300 Ill. 20, 132 N.E. 765.) It is significant that the 30-day provision in the Uniform Commercial Code was not apparent on the face of the check. Anyone unfamiliar with that area of the commercial law would be as susceptible to fraud based on an overdue check as on a check not overdue. Thus defendant's argument is even weaker than that rejected in *Marks*, where the words "void after 30 days" appeared on the face of the check which was cashed 43 days after issuance. We believe the check in question was "apparently capable of defrauding another," and we will not disturb the verdict of the jury on that account.

■■■ Defendant also contends that he was not proved guilty of retail theft beyond a reasonable doubt because the merchandise allegedly not paid for was not in evidence at trial. The record reveals that store manager Trees testified as to what items were found in defendant's possession and as to their approximate value. This testimony was sufficient proof of the items allegedly stolen. (*People v. Banks* (1974), 17 Ill. App. 3d 512, 308 N.E.2d 247.) Defendant also urges without argument that he was arrested inside the store. We assume he is implying that he could not be guilty of retail theft unless he had left the store. However, one who conceals unpurchased merchandise on his person or among his belongings and removes it beyond the last known station for receiving payments in that establishment is presumed to have done so with intent to retain it or to deprive the merchant of the merchandise without paying for it. (Ill. Rev. Stat. 1979, ch. 38, par. 16A—4.) There was ample testimony that defendant was arrested and searched just inside the store exit and that he was then beyond the last checkout point. The contention is without merit.

Affirmed.

KARNS and SPOMER, JJ., concur.