IN THE CASE OF


UNITED STATES, Appellee

v.

Michael A. PAULING, Specialist
U.S. Army, Appellant

No. 02-0603

Crim. App. No. 9700685

---

United States Court of Appeals for the Armed Forces

Argued October 21, 2003

Decided July 1, 2004

*GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and EFFRON J., joined. ERDMANN, J., filed a
separate opinion concurring in part and dissenting in part.
BAKER, J., filed a separate dissenting opinion.*

Counsel

For Appellant: Captain Craig A. Harbaugh (argued); Colonel
Robert D. Teetsel, Lieutenant Colonel Mark Tellitocci, Major
Allyson G. Lambert (on brief); Colonel Adele H. Odegard,
Lieutenant Colonel E. Allen Chandler, Jr., Major Imogene M.
Jamison, and Captain Mary E. Card.

For Appellee: Captain Charles C. Choi (argued); Colonel Lauren
B. Leeker, Lieutenant Colonel Margaret B. Baines, and Major
Theresa A. Gallagher (on brief).

Military Judge: R. J. Hough


**This opinion is subject to editorial correction before final publication**.

United States v. Pauling, No. 02-0603/AR

Judge GIERKE delivered the opinion of the Court.

This case concerns how to charge a "double forgery," which occurs where a check has both "a forged payor signature and a forged indorsement." Black's Law Dictionary 661 (7th ed. 1999). Forging a drawer's signature on a check violates Article 123, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 923 (2000). Forging an indorser's signature on a check also violates Article 123. Where both the drawer's signature and the indorser's signature are forged on the same check, has one forgery offense occurred or two? We hold that the Government may properly charge a "double forgery" as two separate offenses.

## I. BACKGROUND

### A. Case History

In accordance with Appellant's guilty pleas, a general court-martial convicted him of making a false official statement, two specifications of larceny, and two specifications of forgery, in violation of Articles 107, 121, and 123, UCMJ, 10 U.S.C. §§ 907, 921, and 923 (1994). A panel of officer and enlisted members sentenced him to a bad-conduct discharge, confinement for three years, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged.

United States v. Pauling, No. 02-0603/AR

The Army Court of Criminal Appeals affirmed the findings and sentence in a divided unpublished opinion.[1]  We granted review to determine whether separately charging the forgery of the drawer's signature and forgery of the indorser's signature on the same check violates the prohibitions against multiplicity or the unreasonable multiplication of charges.[2]

## B.  Facts

Appellant was charged with forging 16 checks.[3]  He made 12 of the checks payable to himself and four payable to his wife. One specification charged him with forging the writing on the front of the checks, including the drawer's signatures.  A separate specification charged him with forging his wife's

---

[1] United States v. Pauling, No. 9700685, slip op. (A. Ct. Crim. App. July 15, 1999) (per curiam) (mem.).

[2] The granted issues are:
  I.  WHETHER THE LOWER COURT ERRED IN REFUSING TO FIND SPECIFICATION 1 OF CHARGE II (FORGERY) MULTIPLICIOUS WITH SPECIFICATION 2 (FORGERY) OF THE SAME CHARGE WHEN BOTH SPECIFICATIONS ADDRESSED THE SAME FORGED CHECKS.

  II.  WHETHER THE LOWER COURT ERRED IN REFUSING TO FIND SPECIFICATION 1 OF CHARGE III AS AN UNREASONABLE MULTIPLICATION OF SPECIFICATION 2 OF THE SAME CHARGE.

[3] The checks were drawn on a credit union.  At one time, arcane distinctions existed between a "share draft" drawn on a credit union and a "check."  See United States v. Eatmon, 47 M.J. 534, 536 n.2 (A.F. Ct. Crim. App. 1997), aff'd, 49 M.J. 273 (C.A.A.F. 1998).  However, the law of negotiable instruments now includes share drafts within the definition of checks.  See U.C.C. § 3-104 cmt. 4 (amended 2002).

signature as the indorser on the four checks made payable to her.

Before entering pleas, the defense moved to dismiss the specification alleging the forged indorsements, arguing that it was multiplicious with the specification alleging forgery of the writing on the front of the checks. Citing our opinion in United States v. Weymouth, 43 M.J. 329 (C.A.A.F. 1995), the defense counsel offered three rationales: (1) the specification alleging the forged checks "covers" the specification alleging the forged indorsements; (2) the two specifications apply to misconduct that was "substantially one transaction"; and (3) "this is just simply multiplication of charges." The military judge deferred ruling on the motion. Appellant then pleaded guilty to all of the charges and specifications.

After the providence inquiry, the military judge ruled that the two specifications at issue were multiplicious for sentencing purposes, but not for findings purposes. This reduced the maximum authorized period of confinement from 115 years to 95 years. After that ruling, Appellant indicated his continued desire to plead guilty. The military judge then entered findings of guilty to all charges and specifications.

During the providence inquiry, Appellant explained that he acquired possession of the checkbook of his civilian roommate, Little Joe M. Sandoval. Appellant forged 12 of the checks

payable to himself and, without his estranged wife's knowledge,
made four payable to her.  He explained that he made some
payable to his wife "so I wouldn't have so many in my name."  He
indorsed the four checks with his wife's forged signature and
successfully negotiated them at a federal credit union in
Colorado.  Appellant agreed with the military judge that this
could have resulted in his wife's "financial legal liability"
for the money he received.

## II.  DISCUSSION

### A.  Multiplicity

When Appellant forged Mr. Sandoval's signature as the
drawer of the four checks at issue, he clearly violated Article
123 because those signatures, if genuine,[4] would make Mr.
Sandoval legally liable to pay the amounts stated on the checks.
See Manual for Courts-Martial, United States (2002 ed.), Part
IV, para. 48.(b).(1) [hereinafter MCM] (setting out the elements
of forgery).  When Appellant signed his wife's name as the
apparent indorser of the four checks at issue, he also clearly

---

[4] Under Article 123, forgery occurs where a person falsely makes
a signature under circumstances where the forged signature, if
it were genuine, would apparently impose a legal liability on
another.  "In military law, as in the civilian criminal law,
actual legal liability of the person whose signature is forged
to a document is not required; all that is necessary is that
legal liability would 'apparently' result if the signature were
genuine."  United States v. Uhlman, 1 M.J. 419, 421 (C.M.A.
1976) (Cook, J., dissenting).

United States v. Pauling, No. 02-0603/AR

violated Article 123 because had her signature been genuine, the governing state law would have obligated her to pay the face amount of the check if it was dishonored.  See Colo. Rev. Stat. Ann. § 4-3-415 (West Supp. 2003); see also United States v. Faircloth, 43 M.J. 711, 717 (A.F. Ct. Crim. App. 1995) (Becker, J., concurring), rev'd on other grounds, 45 M.J. 172 (C.A.A.F. 1996).  Thus, Appellant could have been charged with forging either the writing on the front of the checks or the indorsements.  The question in this case is whether he could be found guilty of both.

Double forgeries "are not uncommon, because a criminal forging the drawer's signature and hoping to escape detection is unlikely to make the bogus check payable to himself or herself. Therefore, many forged checks are made payable to third parties whose endorsements are then also forged, creating a double forgery."  Alvin C. Harrell, Impact of Revised UCC Articles 3 and 4 on Forgery and Alteration Scenarios, 51 Consumer Fin. L.Q. Rep. 232, 239-40 (1997).  Despite the common nature of double forgery, the issue of whether an accused may be separately convicted of forging a drawer's signature and an indorsement on the same check is a question of first impression in the military justice system.

An unconditional guilty plea waives a multiplicity issue unless the offenses are "'facially duplicative,' that is,

6

United States v. Pauling, No. 02-0603/AR

factually the same." United States v. Lloyd, 46 M.J. 19, 23 (C.A.A.F. 1997) (citations omitted). Whether two offenses are facially duplicative is a question of law that we will review de novo. Cf. United States v. Palagar, 56 M.J. 294, 296 (C.A.A.F. 2002) (issue of whether offenses are greater and lesser-included offenses is question of law subject to de novo review). Two offenses are not facially duplicative if each "requires proof of a fact which the other does not." United States v. Hudson, 59 M.J. 357, 359 (C.A.A.F. 2004) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). Rather than constituting "a literal application of the elements test," determining whether two specifications are facially duplicative involves a realistic comparison of the two offenses to determine whether one is rationally derivative of the other. Id. (citing United States v. Foster, 40 M.J. 140, 146 (C.M.A. 1994)). This analysis turns on both "the 'factual conduct alleged in each specification'" and "the providence inquiry conducted by the military judge at trial." Id. (quoting United States v. Harwood, 46 M.J. 26, 28 (C.A.A.F. 1997)).

In this case, Appellant entered an unconditional plea of guilty and persisted with that plea after the military judge denied the defense's multiplicity motion. Accordingly, we will find multiplicity only if the specification alleging forgery of

the checks facially duplicates the specification alleging forgery of the indorsements.

The two specifications are not facially duplicative. Rather, they separate the information on the front of the checks, which is expressly alleged in one specification, from the indorsements forged on their backs, which is alleged in another. As the Army Court of Criminal Appeals noted, "the precise language of the specification" alleging forgery of the checks "includes only the check numbers, dates, payees, amounts and payors, but not the endorsement signatures." Pauling, No. 9700685, slip op. at 4. The specification alleging forgery of the checks does include Mrs. Pauling's name as the relevant checks' payee. However, the other specification alleges the factually distinct act of forging her signature as the indorser. We agree with those state courts that have recognized forgery of an indorsement as not only factually distinct, but also legally distinct from forgery of the check itself.[5] A double forgery

---

[5] See, e.g., Brown v. State, 7 So.2d 28, 28 (Ala. 1942) (recognizing that an indorsement is a separate contract from the instrument and holding that "forgery of an instrument is a different offense from the forgery of an indorsement of it"); State v. Waterbury, 110 N.W. 328, 328 (Iowa 1907) ("The check was a complete instrument without the indorsements. These formed no part of it, but were distinct contracts."); Green v. State, 363 A.2d 530, 532 (Md. Ct. Spec. App. 1976) ("under the [Maryland forgery] statute, forgery of an indorsement on any of certain specified instruments is, or at least can be, a separately indictable crime"); Miller v. People, 52 N.Y. 304, 305 (1873) ("The check was a complete instrument without the indorsement. The indorsement did not form part of the check, but

creates two victims.  Forging Mr. Sandoval's name as the drawer imposed an apparent legal liability on him to pay the face amount of the check.  Additionally, under the law of the jurisdiction where the checks were negotiated,[6] the indorser is obligated to pay a check's face amount in the event of dishonor. The risk that such an obligation will arise is particularly high where a check bears a forged drafter's signature, thus providing a basis for its dishonor.  Forging Mrs. Pauling's name as the check's indorser therefore imposed an apparent legal liability on her, as well.  Holding that forgery of the drawer's signature is multiplicious with forgery of the indorser's signature would ignore one of the double forgery's two victims.

---

was a distinct contract."); State v. Daye, 208 S.E.2d 891, 893 (N.C. App. 1974) (uttering a forged check and uttering a forged indorsement "are separate and distinct felonies"); Cochran v. State, 30 S.W.2d 316 (Tex. Crim. App. 1930) (holding that because an indorsement on the back of a check does "not constitute a part of" the check itself, charging the forgery of one but proving the forgery of the other resulted in a fatal variance).  Contra see, e.g., People v. Connell, 414 N.E.2d 796 (Ill. App. 1980) (holding that in the context of the forgery statute, the term "makes" includes the term "endorses" because without indorsement, a check cannot be cashed); State v. Hearn, 154 N.E. 244, 245 (Ohio 1926); State v. Smart, No. 76AP-397, 1976 Ohio App. LEXIS 7553 (Ohio Ct. App. Oct. 21, 1976) (holding that forging drawer's name on check, forging indorser's name on check, and uttering the forged check constituted "the same conduct" and could support conviction of only one offense); Sprouse v. Commonwealth, 81 Va. 374, 378 (1886) (treating double forgery as "one transaction – a forgery").

[6] See Col. Rev. Stat. Ann. § 4-3-415 (West Supp. 2003).  This statute is a virtually verbatim duplicate of the official Uniform Commercial Code's text.  See U.C.C. § 3-415 (1993).

As Appellant demonstrated all too well, negotiating a forged check can be accomplished with or without a forged indorsement. Attempting to deceive by falsely indorsing a check with an actual person's name[7] subjects that person to apparent financial liability, thereby satisfying all of the elements of forgery. See MCM, Part IV, para. 48.(b).(1). Such a false indorsement could also lead law enforcement authorities to suspect an innocent person of having forged the check itself. For example, in this case Appellant's misdeeds resulted in law enforcement officials interviewing his wife, fingerprinting her, obtaining handwriting exemplars from her, and taking her sworn statement.

Accordingly, we decline to establish a "two forgeries for the price of one" rule.

B. Unreasonable Multiplication of Charges

Appellant also complains that charging the forged indorsements in a separate specification from the forgery of the writing on the front of the checks resulted in an unreasonable multiplication of charges. "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-

---

[7] In this case, we need not and do not address the multiplicity implications of signing a fictitious name as the indorser on a check bearing a forged drawer's signature.

United States v. Pauling, No. 02-0603/AR

Martial 307(c)(4) discussion. "Unreasonable multiplication of charges is reviewed for an abuse of discretion." United States v. Monday, 52 M.J. 625, 628 n.8 (A. Ct. Crim. App. 1999). See also United States v. Quiroz, 55 M.J. 334, 338 (C.A.A.F. 2001).

We have endorsed a five-part test for determining whether the Government has unreasonably multiplied charges:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

See Quiroz, 55 M.J. at 338 (approving with modification test established by United States v. Quiroz, 53 M.J. 600, 607 (N-M. Ct. Crim. App. 2000)). These factors must be balanced, with no single factor necessarily governing the result.

Even assuming that the defense counsel satisfied the first Quiroz criterion when he objected that "this is just simply multiplication of charges," the defense has not satisfied any of the other four Quiroz criteria.

Regarding the second Quiroz criterion, we have already concluded that the specification alleging forgery of the writing on the front of the checks was aimed at distinctly separate criminal acts from the specification alleging forgery of the indorsements.

Nor can Appellant meet the third Quiroz criterion, which considers whether the charges exaggerate his criminality.  On the contrary, charging the forgery of 16 checks and four indorsements in two specifications was a fair and reasonable exercise of prosecutorial discretion.

In this case, charging the forged indorsements in a separate specification did not implicate the fourth Quiroz criterion concerning increased punitive exposure.  The military judge held that the two specifications were multiplicious for sentencing purposes and adjusted the maximum punishment accordingly.[8]  See United States v. McKinley, 27 M.J. 78, 80

---

[8] While not within the scope of the issues before us, we note that the military judge did not deliver, nor did the defense request, an instruction that the forgery of the four indorsements merged with the forgery of the relevant checks for sentencing purposes.  See United States v. Holsworth, 7 M.J. 184, 187 (C.M.A. 1979).

United States v. Pauling, No. 02-0603/AR

(C.M.A. 1988) (treating military judge's instructions as law of the case).

Finally, nothing in the record suggests prosecutorial abuse, the fifth Quiroz criterion. This was not a case of "unreasonable multiplication of charges by creative drafting." United States v. Morrison, 41 M.J. 482, 484 n.2 (C.A.A.F. 1995). Rather, this was a case of appropriately charging Appellant's overly-creative criminal activity.

### III. CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Pauling, 02-0603/AR

ERDMANN, Judge (concurring in part and dissenting in part):

I concur with the majority that the forgery specifications are not multiplicious for findings. Under the test established in Blockburger v. United States, 284 U.S. 299 (1932) and adopted by this Court in United States v. Teters, 37 M.J. 370 (C.M.A. 1993), the forgery of the payor's signature on the front of a check is a distinct offense from the forgery of the indorser's signature on the back of that same check and the offenses are not facially duplicative. See United States v. Lloyd, 46 M.J. 19, 23 (C.A.A.F. 1997). Under the circumstances of this case, however, I believe that charging forgery of all 16 checks and separately charging forgery of Specialist Pauling's wife's signature as indorser on four of those checks constitutes an unreasonable multiplication of charges.

FACTS

Pauling was charged with forging 16 checks belonging to Little Joe Sandoval. He made 12 of the checks payable to himself and four of the checks payable to his wife. As Pauling explained, he did so to avoid having "so many in [his own] name." On those four checks, he forged Mrs. Pauling's signature on the back of each check as the indorser. He cashed all of the checks, cumulatively worth approximately $5,000, on 16 separate occasions at two financial institutions over a month's time.

Pauling was also charged with two specifications of larceny, one alleging larceny of $1,675 from the Army National Bank, Fort Carson, Colorado, and the other alleging larceny of $3,400.39

1

from the Security Service Federal Credit Union, Fort Carson.  The larceny specifications reflected the money Pauling obtained when he cashed the 16 forged checks.  All four of the checks made payable to Pauling's wife were cashed at Security Service Federal Credit Union.

Defense counsel moved to dismiss Specification 1 of the forgery charge (forgery of Mrs. Pauling's signature as indorser four times), asserting that Specification 1 was multiplicious with Specification 2 (forging the front side of all 16 checks).  Defense counsel did not specifically move to dismiss specification 1 on the basis of unreasonable multiplication of charges but did mention the "multiplication of charges" in making the motion to dismiss.

During argument on the multiplicity motion defense counsel also asserted that Charge II (larceny) was multiplicious for sentencing.  The military judge ruled that the larceny specifications were not multiplicious for findings or sentencing with the forgery specifications.  He also ruled that the two

forgery specifications were not multiplicious for findings but that they were multiplicious for sentencing purposes.[*] Despite making this determination, the military judge failed to inform the members that the two forgery specifications should not be considered separately for punishment.

DISCUSSION

The concept of unreasonable multiplication of charges is based on Rule for Courts-Martial 307(c)(4) [R.C.M.]. "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4) discussion. To determine whether a military judge or Court of Criminal Appeals has abused its discretion and affirmed an unreasonable multiplication of charges, we apply a five-part test:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

---

[*] A finding that there is no multiplicity for findings but there is multiplicity for sentencing, in this case and others, raises interesting questions. This Court and the United States Supreme Court have applied the standard in Blockburger v. United States, 284 U.S. 299 (1932), to both inquiries. See Albernaz v. United States, 450 U.S. 333 (1981); United States v. Oatney, 45 M.J. 185, 189 (C.A.A.F 1996). If the Blockburger test is met for multiplicity for sentencing, it raises the question as to why it would not also be met for multiplicity for findings, invalidating both the sentence and the conviction. See Rutledge v. United States, 517 U.S. 292 (1996); Ball v. United States, 470 U.S. 856 (1985).

>     (4)   Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?
>
>     (5)   Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

United States v. Quiroz, 55 M.J. 334, 338-39 (C.A.A.F. 2001). I agree with the majority with respect to factors one and two. However, I believe that the remaining factors support a conclusion that there was an unreasonable multiplication of charges in this case.

For each check upon which Pauling made his wife the payee, he faced triple conviction and punishment: five years for forging the front of the check, five years for forging the indorsement on the back, and a larceny conviction that included another five years of potential confinement. For Pauling's scheme to forge and cash the 16 checks he was charged with four felonies and exposed to 110 years of confinement.

In my view, this three-fold multiplication of Pauling's punitive exposure exaggerated his criminality, unreasonably increased his punitive exposure, and constituted overreaching in the charging process. Under the circumstances of this case, charging forgery twice, once for the maker and once for the indorser, constitutes piling-on.

I would set aside the finding of guilty of Specification 1 of Charge III, and affirm the remaining findings of guilty and the sentence.

United States v. Pauling, No. 02-0603/AR

Judge BAKER (dissenting):

I respectfully dissent for the following reasons.

Multiplication of Charges

Like Judge Erdmann, I would decide this case on the ground that Appellant was subjected to an unreasonable multiplication of charges. Appellant stole 16 checks from Sandoval and forged Sandoval's name as the drawer on all 16 checks. He made himself the payee on 12 of the checks and made his estranged wife the payee on four of the checks. On those checks that designated his wife as the payee, Appellant signed his wife's name on the back of the checks and then cashed the checks. Appellant's wife was not aware of his fraudulent acts.

The only thing creative about this case was the Government's charging scheme. With respect to the four checks for which Appellant made his wife the payee and forged her signature as the indorser, the Government charged Appellant with "double forgery," forgeries for the front of the checks and separate forgeries for the back of the checks. As a result, Appellant was potentially exposed to an additional 20 years of confinement for a total of 115 years of confinement. I believe 95 years exposure addressed Appellant's wrongdoing in stealing and forging 16 checks in the amount of $5,075. Although the military

checks in the amount of $5,075.  Although the military judge considered the four "double forgeries" multiplicious for sentencing purposes, the Government's charging scheme nonetheless exaggerated the criminality at issue.

### Double Forgery

My view on the unreasonable multiplication of charges is reinforced by my skepticism that this is the case on which to substantiate a theory of "double forgery."  I am not persuaded Appellant committed a separate offense under the Uniform Code of Military Justice when he signed his wife's name as the indorser on four checks upon which he had already forged the drawer's signature.

The elements of forgery under Article 123, UCMJ, 10 U.S.C. § 923 (1994) are:

(a)     that the accused falsely made or altered a certain signature or writing;

(b)     that the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change another's legal rights or liabilities to that person's prejudice; and

(c)     that the false making or altering was with the intent to defraud.

The majority has premised its conclusion on the notion that Mrs. Pauling incurred an apparent legal liability because "under the law of the jurisdiction where the checks were negotiated, the indorser is obligated to pay a check's face amount in the event of dishonor."  ___ M.J. ___

2

Further, according to the majority, "[t]he risk that such an obligation will arise is particularly high where a check bears a forged drafter's signature, thus providing a basis for its dishonor." Id. at ___. However, I am not convinced the Colorado Commercial Code considers the forged signature of Mrs. Pauling an indorsement for liability purposes. Secondly, I am not convinced she would have incurred an apparent legal liability if her indorsement on these checks were genuine and she was not complicit in the forgery scheme. We must keep in mind that if the wife's signature were genuine, it would still be a genuine signature on a stolen and forged instrument.

A. Mrs. Pauling's forged signature

As the lead opinion notes, the Colorado Commercial Code states ". . .if an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument. . . according to the terms of the instrument at the time it was indorsed." C.R.S. § 4-3-415. However, this provision must be read in light of the Colorado Code's treatment of unauthorized signatures. Under the Colorado Code, an indorsement means "a signature, other than that of the signer, drawer, or acceptor, that. . . is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or

3

(iii) incurring indorser's liability on the instrument." C.R.S. § 4-3-204. Under the section entitled "Signature," the following is found: "A person is not liable on an instrument unless. . . the person signed the instrument." C.R.S. § 4-3-401. The comment to this section states: "Obligation on an instrument depends on a signature that is binding on the obligor." And "[s]ignature includes indorsement." C.R.S. § 4-3-401 Comment. Furthermore, § 4-3-403 states that "[u]nless otherwise provided in this article or article 4 of this title, an unauthorized signature is ineffective <u>except as the signature of the unauthorized signer</u> in favor of a person who in good faith pays the instrument or takes it for value." C.R.S. § 4-3-403. An unauthorized signature is defined in § 4-1-201 as including a forgery. In essence, a forgery is effective only as the signature of the forger.

In this case, assuming as the majority does, that the reason for dishonor would be discovery of the forgery, Mrs. Pauling would not have been considered an indorser because her signature was unauthorized. Thus, the Colorado Code imposed no liability on her under § 4-3-415, apparent or otherwise, in the event of dishonor.

4

B.  If Mrs. Pauling's signature were genuine

Even if Mrs. Pauling's signature were genuine, it would not have exposed her to an apparent legal liability or changed her legal rights or liability to her prejudice. See Article 123, UCMJ.  Under the Colorado Code and its uniform counterpart, there are several possible scenarios that might arise relevant to Mrs. Pauling's apparent liability if her indorsement was considered genuine on a check that otherwise contained the forged signature of the drawer.

(1) Assume for the moment that Mrs. Pauling was a good faith holder and genuine indorser of a check with a forged drawer signature.  Further, assume she deposited the check in her bank and Sandoval's bank (drawee bank) subsequently paid the check.  Under § 4-3-418 of the Colorado Code, if the drawee bank mistakenly paid the check over the forged signature of the drawer, the drawee bank could possibly seek to recover the amount paid on an equitable theory of unjust enrichment.  However, this would only be true as long as the wife had not changed her position in reliance on the payment.  C.R.S § 4-3-418(c).  Under paragraph 48(c)(4) of the Manual for Courts-Martial regarding apparent legal efficacy, "the writing must

5

appear either on its face or from extrinsic facts to impose a <u>legal liability</u> on another." So, while in theory the drawee bank could seek a remedy "in equity," this is certainly not <u>apparent</u> on the face of the writing. It seems clear that in such a case, the Colorado Code affords the drawee bank no remedy "at law" stemming from any legal liability on the part of Mrs. Pauling. Moreover, the record in this case suggests the actual facts are even different from the hypothetical just posed. Here, after signing his wife's name, Appellant actually cashed the checks and received payment. Therefore, no party could even recover in restitution from Mrs. Pauling because she never received the benefit of the fraudulent payments. (2) Mrs. Pauling could potentially incur liability if her failure to exercise "ordinary care" "substantially contribute[d]" to the making of the forged signature. C.R.S 4-3-406 comment 4; James J. White & Robert S. Summers, Uniform Commercial Code § 16-3(b) (5th ed. 2000). Again, it is not apparent on the face of the writings, nor, is there any indication in the record to suggest that Mrs. Pauling knew of, had reason to know of, or was complicit in the fraudulent acts of Appellant.

One thing is clear, under the Uniform Commercial Code (UCC) and Colorado law, the relationships and responsibilities of payees, drawers, indorsers and holders, are sufficiently complex that in a case like Mrs. Pauling's, whatever legal liability might arise with respect to a genuine signature would not be apparent from her genuine indorsement on a forged instrument.

If apparent means "manifest" or "palpable" it is not clear to me that the UCC, as adopted in Colorado state law, guides one to a manifest conclusion regarding the wife's liability if her signature was assumed genuine. Nor does it "seem" that Mrs. Pauling would be liable--quite the contrary. Therefore, while the wife is clearly a "victim" of her estranged husband's conduct in a natural law sense, I do not believe it is apparent that she would have incurred any legal liability in this case.[*] Accordingly, on the basis of an unreasonable multiplication of charges and failure to state an offense on the facts of this case, I would dismiss the specification that alleges separate forgeries for the four checks bearing the wife's unauthorized signature.

---

[*] This conclusion is fact specific. I am not suggesting a forged indorsement can never serve as the basis for a forgery charge.

7