People of the State of Illinois, Plaintiff-Appellee, v. Edward M. Johnson and Leroy P. Newell, Defendants-Appellants.

Gen. Nos. 53,643, 53,644. (Consolidated.)

First District, Fourth Division.

March 31, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Defendants were jointly charged with armed robbery. They were convicted by a jury. After denying post-trial motions, the court sentenced Johnson to serve five to eight years and Newell, three to seven years. Defendants appeal, contending that (1) the trial court abused its discretion when it denied their motion for a new trial and (2), they were not proven guilty beyond a reasonable doubt.

There was testimony that on July 28, 1967 at approximately 12:35 p. m., in the 3000 block of Franklin Boulevard, an east-west street in Chicago, George L. Patten was returning to his place of work from lunch. As he approached a two-story building, he saw three Negro men sitting on its concrete stairs. One man, according to Patten, was the defendant Newell. He had chin whiskers, was about 6' 1" in height with a black bandana on his head, wore a blue denim jacket and dark trousers. Another, was the defendant Johnson, who was about 5' 7½" in height and wore a blue sport coat and dark trousers. In his testimony, Patten described Johnson's eyes which he said "[w]ere sleepy looking, kinda droopy." The third man "[w]as more stocky . . . ." about 5' 9" in height and wore a black shirt with polka dots.

July 28th was a clear day. When Patten reached where the men were, they stopped him. The one he later identified as Newell took a knife, put it on Patten's stomach and told him that if he made a sound his guts would be on the sidewalk. Another, the one identified as Johnson, went through Patten's pockets and took his wallet which had in it about $8, some identification cards and some pictures. The third man (who was not apprehended) held Patten's upper right arm while the man he said was Johnson went through his pockets. The three men were in Patten's presence about ten seconds. After his wallet was taken, they told Patten to keep walking and keep quiet. Patten left, walked about 30 feet, broke

71

into a run, went east and then south on Sacramento Avenue. After he reached his place of employment, Patten called the police, reported the robbery and gave a description of two of the three men.

About 12:30 p. m. the same day, Terrence McCue, a career counselor for the Chicago Committee on Urban Opportunities, was standing on the south parkway of Franklin Boulevard between Whipple and Albany, the 3000 block. He saw three Negro men walking briskly, going west. He observed them for about 45 seconds to a minute. One of the men, according to McCue, was defendant Newell and was about 6' 2". He had a black bandana on his head, wore a blue jean jacket and dark pants. He had a goatee. Another, described by McCue as the defendant Johnson, was about 5' 9" in height and wore a blue sport coat and dark pants. The third, McCue said, was about 5' 10" and wore a black shirt with yellow polka dots. McCue testified that the build of the first two men was slim; the third was "[s]tocky, well-built. . . ." At the time McCue saw the three Negro men, he saw a white man walking east on Franklin, break into a run and turn south on Sacramento. McCue testified that the white man was the complaining witness, George L. Patten.

Several squads of Chicago policemen responded to Patten's call. Two of them went by where McCue was standing. He flagged one of them, talked with a police officer and entered the car. The party with whom Patten talked when he made the call told him to go out in the street and wait. Instead of doing this, he walked to Sacramento and Franklin and obtained a ride from a civilian who drove him to the squad car in which McCue was riding. He entered it and the car proceeded south on Kedzie. At the intersection of West Walnut Street, Patten saw the three men buying shaved ice from the peddler of an ice cream cart. Patten noticed the man who was wearing

72

the black shirt with polka dots. McCue also saw the three men. According to him, they were dressed "[T]he same way that they had been dressed when I had seen them the first time. . . ." A moment after Patten pointed his finger at them, the three men ran through a gangway.

Of the squad cars that responded to Patten's call, one had in it Officer McGaha and his partner, Officer Desmond Walsh. This car drove north on Kedzie, west in an alley where McGaha saw three Negro men running east. In his testimony McGaha described one of the men as about "5' 11" or 6 feet" in height with a black bandana on his head and wore a blue denim jacket, dark trousers and had a goatee. This man, McGaha said, was the defendant Newell, a man he saw the day before for about 10 minutes and spoke with him. Another, he said, was about 5' 7" in height, wore a blue sport coat, dark trousers and blue shirt. The third, was "[s]horter than Mr. Newell and a little taller than Mr. Johnson . . . ," and wore a black polka dot shirt. Walsh chased the stocky man but lost him. McGaha chased the man with the light blue sport coat, dark trousers and caught him. He was the defendant Johnson.

Sergeant Chester Zaprzalka was patrolling the district when Patten's call was transmitted to him. He drove to Kedzie and West Walnut Street. He testified that a quarter of a city block away, looking west on Walnut, he saw a Negro man walking east on the south side of the street and removing a black bandana from his head. The man was about 6' tall and wore a blue jacket and dark trousers. He had a goatee. Zaprzalka arrested him. It was the defendant Newell. Just then, another squad car drove up. In it were McCue and Patten. Patten ran to where Newell was being held by Zaprzalka and said, "That is the man just held me up." Newell and Johnson were taken to the police station. Later in the day, Pat-

73

ten's wallet was found on Franklin Boulevard between Kedzie and Sacramento by a man who worked under McCue's supervision. There was no money in the wallet.

Defendants did not testify. There was testimony that on July 28, 1967 Johnson left home "[a]bout 12:45 . . . ." Before he left home, he had asked his stepsister to repair one of his jackets, a blue one. Newell left his home "[I]t was about—it had to be about 12:30 . . . ." He had on blue pants and a blue jacket. He was not wearing a goatee. His stepsister, Syntharene Johnson, swore that she had never seen Newell with a goatee. He returned home at "[a]bout 12:45 . . . ." His stepmother, Dorothy Williams, had a dental appointment at 1:00. Newell, she said, left home "[a]round 12:00 or 12:30." He never had a goatee. He had not returned when she left for her dental appointment. Howard Reeves, an in-take clerk in the Cook County Jail, was called by defendants to introduce into evidence a photograph of Newell taken in jail after his arrest. After hearing the witnesses and considering the evidence, the jury found both defendants guilty of the armed robbery of George L. Patten on July 28, 1967.

Defendants moved for a new trial. One of their grounds was a claim of newly discovered evidence. When the motion was heard, defendants supported it with the testimony of Marian Walker, defendant Johnson's mother. Mrs. Walker testified that on August 15, 1967, she was present at the preliminary hearing of the charges concerning her son. She talked with Patten and asked him to tell her about the robbery. Patten, according to Mrs. Walker, said that he was walking down Maypole Street on his lunch hour and three boys, one with a knife, held him up and took his money. When asked if he could tell which one had done that, Patten said, according to Mrs. Walker, "[N]ot off hand." Defendants submitted Mrs. Walker's testimony as newly discovered evidence because when the case was heard she was ill

and not available as a witness. The trial judge denied the motion. Defendants contend that this ruling was an abuse of judicial discretion.

██ ██ To warrant a new trial because of newly discovered evidence the new evidence must be of such conclusive character that in another trial it will probably change the result. It must be material to the issue, not merely cumulative; it must have been discovered since the trial and be of such character that it could not have been discovered by exercise of due diligence. People v. Baker, 16 Ill2d 364, 374, 158 NE2d 1; People v. Burrington, 101 Ill App2d 230, 242 NE2d 433. However, evidence which will only serve the purpose of impeachment is not a justification for granting a new trial on the grounds of newly discovered evidence. People v. Johnson, 286 Ill 108, 121 NE 246; People v. Petrilli, 344 Ill 416, 176 NE 437. Even if Mrs. Walker's testimony were considered as having met the other tests of newly discovered evidence (which we think it did not), it would only tend to impeach Patten; it would not be substantive evidence. 98 CJS, Witnesses, § 537. Under these circumstances, denial of defendants' motion for new trial was not an abuse of judicial discretion.

Defendants contend that the evidence did not prove them guilty beyond a reasonable doubt. They rely on what they describe as inconsistencies in Patten's testimony concerning the place of the robbery about which he complained. Defendants point to a report of proceedings of Patten's testimony at the preliminary hearing. It appears that the Assistant State's Attorney asked Patten whether "[Y]ou had an occasion to be at or near 3200 West Walnut Street?" Patten answered, "Yes." Patten then testified about the robbery. He was not asked, nor did he say, how near 3200 West Walnut was the robbery. The record also contains Patten's testimony before the Grand Jury. The Assistant State's Attorney there asked Patten, "[W]ere you in the vicinity of

75

3200 West Walnut?" Patten answered, "Yes." Defendants argue that Patten's answers on these two occasions are inconsistent with his testimony at trial that the robbery occurred in the 3000 block of Franklin Boulevard, a distance some five blocks from 3200 West Walnut. When Patten was cross-examined, he was not asked about his prior testimonies.

■■ It is an elementary rule of evidence, rooted on concepts of fairness, that before a witness who is not a party can be impeached by a prior inconsistent statement, he should be asked concerning it in order to avoid unfair surprise and give him an opportunity to explain his previous answers. People v. Boulahanis, 394 Ill 255, 263, 68 NE2d 467; People v. Moses, 11 Ill2d 84, 87, 142 NE2d 1. Defendants do not explain why, with the reports of proceedings available at trial, they did not cross-examine Patten about what they now claim were inconsistent statements. Failure of defendants to give Patten the opportunity to explain his previous answers bars them from the contention they now make. We also question the significance of the alleged discrepancies in Patten's testimony.

Defendants argue that a reasonable doubt of their guilt is raised by the testimony of their alibi witnesses and by these facts: (1) the bandana which Patten said Newell was wearing at the time of the robbery was not produced; (2) the inconsistencies in the identification testimony of Patten and that of McCue; and (3) the finding of Patten's wallet some distance away from where he said the robbery occurred.

■ This argument is without merit. The State did not have to produce the bandana in order that the testimony of Patten and that of Zaprzalka concerning it be believed. See People v. Crable, 80 Ill App2d 243, 225 NE2d 76. In a case like the one before us, where a complaining witness describes an assault by three differently dressed men and a witness like McCue testifies to seeing some

76

part of the incident, it would be surprising if some discrepancy does not appear in the description each gives of the phase of the episode he claims to have witnessed. The discrepancies in the testimony of Patten and of McCue to which defendants point were too minor to render these witnesses unworthy of belief. People v. McAfee, 80 Ill App2d 142, 225 NE2d 74. Although discrepancies and inconsistencies tend to weaken the testimony of witnesses, the weight to be given what they say, taking into consideration such discrepancies, is in the first instance a question for the jury. In the absence of such differences as demonstrate a reasonable doubt of defendants' guilt, this court will not substitute its opinion for that of the jury. The identification of defendants by Patten and McCue was positive and certain. Although defendants introduced evidence of alibi, the jury, as triers of the facts, was not obliged to believe the alibi witnesses. People v. Setzke, 22 Ill2d 582, 586, 177 NE2d 168. Where identification is positive, by credible witnesses, as in the case at bar, a verdict of guilty will be sustained notwithstanding there may be otherwise uncontradicted alibi evidence. People v. Wheeler, 5 Ill2d 474, 483, 126 NE2d 228; People v. Habdas, 94 Ill App2d 330, 338, 236 NE2d 731. Our careful review of the record impels us to conclude that the evidence on which the jury rested its verdict proved defendants guilty beyond a reasonable doubt. Judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.