THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN LOPEZ, Defendant-Appellant.
Second District   No. 77-421

Opinion filed April 6, 1979.

Julius Lucius Echeles, of Chicago, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Melvin Lopez, a minor, was indicted for the murder of Michael Rivera; Melvin's brother, Benel Lopez, Carlos Frank Colon, and Jose Ramos were charged under a separate indictment with the same murder. Melvin's younger brother, Irving Lopez, was allegedly also involved in Rivera's death but was dealt with in juvenile court. The charges against Ramos were dropped in exchange for testifying for the State against his former codefendants. In a jury trial, defendant and his brother Benel were represented by the same attorney and Colon was represented by another attorney. Benel was found not guilty; defendant and Colon were found guilty of murder and each was sentenced to 25 to 60 years imprisonment.

On appeal, defendant contends: (1) he was denied effective assistance of counsel because of a conflict in representing both defendant and his brother; (2) it was error to admit in evidence an inculpatory statement made by defendant; (3) he was prejudiced by testimony of the deceased's surviving family; (4) he was improperly denied the right to cross-examine a State's witness regarding bias and interest; and (5) he was

prejudiced by a remark of the prosecution in closing argument. The facts of the murder itself are not relevant to a determination of any issue raised; such facts as are necessary to a consideration of an issue are included in the discussion of that issue.

■■ Defendant and his brother Benel were represented by one attorney who had been retained by their father. Defendant contends that because there was substantially more evidence against him than against his brother, he was denied effective representation by counsel and his own defense was hindered by the simultaneous representation of his brother. Joint representation of codefendants is not a *per se* denial of effective assistance of counsel (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173); an actual conflict of interest must still be shown. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) In Illinois, unless a defendant properly establishes that a conflict of interest actually exists or becomes apparent during trial, the court should not indulge in speculation to determine whether separate counsel is required in the interest of justice. (*People v. Thompson* (1977), 51 Ill. App. 3d 53, 366 N.E.2d 375.) On appeal, a defendant bears the burden of showing that he and the codefendant had antagonistic defenses or that counsel had other conflicts of interest in defending his clients. (*People v. Finn* (1978), 68 Ill. App. 3d 126, 385 N.E.2d 103.) Most important, however, is the fact that if a conflict exists or one arises during trial of codefendants, a timely motion for separate trial must be made. *People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800.

■ In the present cause, defendant made a motion for severance as to Ramos, which was granted, and as to Colon, which was denied; he never made a motion for severance from his brother Benel. The first indication that a joint defense of defendant and Benel allegedly presented a problem was in defendant's motion for a new trial. Counsel therein noted that there were no conflicting statements or antagonistic defenses between defendant and Benel; however, he stated that he believed it became apparent during trial that his joint representation was an error because the greater weight of evidence against defendant forced a disassociation of the defenses of the two. If, as counsel alleged, a conflict arose during trial, then he should have presented the information to the trial court. His failure to do so, and his attempt to raise it for the first time in the motion for a new trial was untimely if, as counsel alleges, he was previously aware of the alleged conflict. However, even if we were to consider the merits of defendant's argument on appeal we would conclude that the joint representation did not deny him the effective assistance of counsel. We agree with defense counsel that there were no conflicting statements or antagonistic defenses; however, we disagree with the proposition that a difference in the amount of evidence between codefendants is an adequate basis on which to find a conflict. Adoption of such a rule would

almost eliminate joint representation since there will usually be somewhat different evidence against different defendants, and therefore more evidence against one than against another. The difficulties in representing codefendants who have different amounts of evidence against them are matters best left to trial counsel in determining his strategy in the case, and we will not second guess legitimate strategies regarding examination and impeachment of witnesses and presentation of evidence at trial.

■ Defendant next contends that an inculpatory statement which he made was involuntarily taken and therefore was improperly admitted at trial. Defendant's father was concerned about the possible involvement of his sons in the Rivera murder; he contacted the Lake County State's Attorney, who suggested that he come with the boys to his office the next morning, which he did. With the father present, defendant was initially asked about his knowledge of the events surrounding the murder. Defendant repeatedly denied any knowledge of the murder. During this preliminary questioning, Jose Ramos gave a statement which implicated defendant. On being told of this, defendant consulted with his brother Irving, and then decided to make the statement which was admitted at trial. Although defendant was first informed of the *Miranda* rights immediately prior to the taking of the statement, we believe that it is evident that defendant's presence was voluntary and that he was not in custody; the preliminary questioning therefore does not fall within the *Miranda* rule.

■ Defendant urges that various other factors related to the preliminary questioning render his statement involuntary. Foremost among these is the contention that by denying knowledge of the murder and initially refusing to make a statement he was in effect demanding that questioning stop. It has been held that refusal to make a statement and denial of knowledge of a crime do not constitute a request that questioning stop (*People v. Walker* (1971), 2 Ill. App. 3d 1026, 279 N.E.2d 23), and we hold that under the facts of the present cause defendant's conduct did not amount to a request for questioning to end. As to other factors such as whether the State's Attorney screamed at defendant, whether defendant was under the influence of drugs, whether defendant was coerced or given false promises, the record provides contradictory testimony. Because the trial court's decision not to suppress the statement is not against the manifest weight of the evidence, we will not disturb that decision. *People v. Lakes* (1978), 60 Ill. App. 3d 271, 376 N.E.2d 730.

■■ Defendant argues next that it was reversible error for the State to elicit testimony that the deceased was survived by a common law wife and three children. Defendant's objection to the testimony was sustained, his motion for a mistrial was denied, and the jury was instructed to disregard the statement. Such evidence may be highly prejudicial and constitutes reversible error unless an objection to it is sustained and the

jury is instructed to disregard it. (*People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161.) Such evidence, depending on the factual circumstances, may also be harmless, particularly when the death penalty is not imposed. (*People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626.) Considering that there was only a brief offending line of questioning which was not alluded to again, that defendant's objection was sustained, that the jury was directed to disregard the testimony, and that the death penalty was not imposed, we hold that any error in this regard was harmless beyond a reasonable doubt.

■ Pursuant to an immunity agreement, Jose Ramos provided testimony which implicated defendant in the murder. Defense counsel cross-examined Ramos to show bias and interest in that Ramos had previously worked for the city of Waukegan, the Waukegan Housing Authority, and the Lake County clerk. On the basis of lack of relevance, counsel was not permitted to examine regarding whether Ramos had received a letter of recommendation from the State's Attorney, whether he had gotten a job with the aid of an organization called the Puerto Rican Society, or whether he was a neighbor of the mayor of Waukegan. Generally, the latitude allowed in cross-examination of a witness is within the discretion of the trial court; it should be kept within fair and reasonable limits, and a reviewing court will not interfere absent a clear abuse of that discretion which results in a manifest prejudice to the defendant. (*People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569.) In our view there was no abuse of discretion here. Further, assuming arguendo that there was, we find no prejudice to defendant since we believe that the bias which defendant contends he was attempting to establish, a political relationship, was established by the testimony which was already elicited. Additional testimony on this point would have been merely cumulative.

■■■ Finally, defendant contends that the State's closing argument was prejudicial. The comment in question was, "Melvin Lopez, it has been obvious since the beginning, Melvin Lopez has been kissed off in this case." Considering that there was a timely objection which was sustained and that the jury was instructed to disregard the remark, we do not believe that this single remark, in light of the record as a whole, was sufficient to prejudice defendant. Where it appears that improper remarks do not constitute a material factor in the conviction, the verdict will not be disturbed. *People v. Fields* (1974), 59 Ill. 2 516, 322 N.E.2d 33, *cert. denied* (1975), 423 U.S. 843, 46 L. Ed. 2d 65, 96 S. Ct. 80.

The decision of the circuit court is accordingly affirmed.

Affirmed.

GUILD, P. J., and LINDBERG, J., concur.