THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR GARZA, Defendant-Appellant.

Third District    No. 79-878

Opinion filed January 13, 1981.—Rehearing denied February 19, 1981.

Robert Gorbold, of Thomas, Wallace, Feehan & Baron, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant in this cause, Arthur Garza, was found guilty of the murder of Bridgette Regli by a jury in the Will County Circuit Court. Two other men, Phillip Kline and Glen Schultz, Jr., were convicted in separate trials for the same offense. On this appeal defendant Garza urges us to find that multiple errors occurred in the trial below.

On December 6, 1973, Bridgette Regli was a 16-year-old high school student at Crete-Monee High School. After eating breakfast on the morning of the 6th, Miss Regli left for the high school, which is approximately one mile from her home. Later that day, at approximately 1 p.m., Valinda Avey saw Miss Regli get into a small two-door car that was cream or tan in color with a darker interior. Miss Regli was never seen alive again.

On December 8, 1973, a hunter found Miss Regli's body in a wooded area in Crete Township. Sheriff's deputies were called and testified that at the time the body was found, it appeared to be frozen. They found blood on a tree near where the body was found, as well as on two old pieces of wood which lay on the ground approximately two feet from the body. The decedent was fully clothed and clutched in her frozen lifeless hand was a lock of human hair.

More than five years later, on December 29, 1978, the defendant, Arthur Garza, was arrested pursuant to a criminal complaint which charged him with the murder of Miss Regli. On January 26, 1979, the defendant was indicted for the same act by a Will County grand jury. Later that same year, on August 15, a Will County petit jury found the defendant guilty of murder, and the court subsequently sentenced him to a term of not less than 15 nor more than 25 years' imprisonment. The defendant appeals that conviction, alleging that errors occurred in the trial and pretrial procedures which transpired below. Moreover, the defendant alleges that the evidence presented at his trial below was, as a matter of law, insufficient to support his conviction.

The defendant reminds us that one of the fundamental and constitutionally guaranteed precepts of our criminal justice system is that the State must prove the defendant in any criminal matter guilty beyond a

reasonable doubt. Defendant urges us to find that notwithstanding other matters which occurred below which defendant characterizes as reversible error, the State simply failed to prove the defendant guilty of the murder of Bridgette Regli beyond a reasonable doubt. In so urging, the defendant relies primarily on several witnesses who placed him elsewhere at the time Miss Regli was slain. Further, defendant suggests that the credibility of the State's primary witnesses should be seriously questioned.

The State's two principal witnesses were Marlena Wooten and Anna Kline. Both of these women testified that they were present at the Dixie Inn on November 15, 1978, when the defendant admitted his role in the slaying of Bridgette Regli. According to Ms. Wooten, the defendant boasted that he was the only lucky one out of the three individuals who participated in the killing of Miss Regli. He continued his boast by pointing out that "one went crazy and one was in jail." Ms. Wooten recalled that the defendant identified Phillip Kline as the one in jail and Glen Schultz, Jr., as the one that "went crazy." The defendant allegedly admitted to striking the decedent with a tire iron because she had taken a photograph of a drug transaction that he and Mr. Kline were engaged in. He also admitted that he sexually assaulted the decedent after killing her. Finally, Ms. Wooten recalled that according to the defendant's Dixie Inn confession, after murdering Miss Regli, Garza secreted the decedent's books and camera in Regli's boyfriend's car.

Ms. Kline was Ms. Wooten's sister-in-law. Also, she was Phillip Kline's estranged wife. Anna Kline's recollection of the Dixie Inn confession is much the same as that testified to by Ms. Wooten. There were indeed differences in their recollection, and the defendant suggests that these differences cast serious doubt on their credibility. One witness remembered the defendant admitting that his weapon was a tire iron, the other witness thought the defendant said jack handle. Since these terms could be said to be essentially interchangeable, we do not believe this discrepancy in their recollections is significant. Further, each of the witnesses to the Dixie Inn confession recalled the defendant as using a different vulgarism to describe his sexual assault of the decedent. Again, we do not believe this casts a serious shadow on the witnesses' credibility.

The defendant makes several other attacks on the credibility of the witnesses to the November 15 confession. First, it is suggested that Ms. Kline used and sold drugs. Ms. Kline's sister, Rhonda Shambo, testified that Ms. Kline's only motive for testifying was to get revenge on her estranged husband. Both Ms. Wooten and Ms. Kline had been warned by agents of the State that a refusal to testify could have adverse consequences. The jury considered all of these matters, but it is apparent from the verdict that they were nevertheless impressed with the credibility of

Ms. Kline and Ms. Wooten. The jury undoubtedly drew a distinction between being compelled to testify and being compelled to testify falsely. Ordinarily, it is the province of the jury to determine the credibility of the witnesses. (*People v. Rolon* (1979), 71 Ill. App. 3d 746, 390 N.E.2d 107.) Where the jury has made a determination on issues within its province, that determination will not be reversed unless the supporting evidence is improbable, unconvincing, or contrary to human experience. (*People v. Graydon* (1976), 38 Ill. App. 3d 792, 349 N.E.2d 127.) We cannot say that the credibility of the two Dixie Inn witnesses was so thoroughly undermined that the jury could not as a matter of law choose to believe the testimony which those witnesses proffered.

The defendant also urges us to find that the Dixie Inn confession recounted by Ms. Kline and Ms. Wooten is not supported by the circumstantial evidence in this case. A review of that evidence causes us to reach a contrary conclusion.

Miss Regli was a photographer for school activities and she virtually always carried a camera with her. On December 6 as she entered the small, two-door tan or cream-colored auto, she carried her books and a "bulky object" with her. Later investigators found scattered near her body some books, a portfolio for clarinet, spiral notebooks, a clarinet and a purse, all of which were identified as belonging to the decedent. No camera was ever found.

Analysis of the lock of hair clutched in Miss Regli's hand revealed that it matched a hair sample taken from Glen Schultz, Jr. Similar samples, although not numerous enough to make a positive match, were found on a glove in a creamish-white Mustang belonging to Phillip Kline's father.

When Miss Regli entered the tan or cream-colored vehicle on December 6, 1973, Valinda Avey was a student in the eighth grade. According to Ms. Avey, she did not recognize the make of car on that day in 1973, but later when she started driving she realized that it could have been a Mustang. Ms. Avey watched the slain high school student enter the light-colored vehicle as a high-school age male with dark shoulder-length hair and dark skin got out and then back in. The defendant admitted that in December of 1973 he had shoulder-length hair and, of course, the jury observed his skin color.

Phillip Kline admitted having the use of his father's Mustang all day on December 6, and the defendant admits that he spent all day with Mr. Kline. Specifically the defendant admits being with Kline from 8:15 a.m. until the two left for Florida that same evening. The autopsy report suggests that Miss Regli was bludgeoned to death sometime between 11 a.m. and 1 p.m. Taken together, this circumstantial evidence places the defendant together with the driver of a motor vehicle which matches the

description of the vehicle that Miss Regli entered just prior to her death. Further, hair samples in the Kline car were not distinguishable from the hair samples found in Miss Regli's death grip. Standing alone, the similarity of the vehicles and the similarity of the hair samples would leave considerable doubt in the minds of many. In light of the Dixie Inn confession, however, much credence is bestowed on the testimony of Ms. Kline and Ms. Wooten.

Not all the elements of the Dixie Inn confession comport with other evidence presented at the trial below. The autopsy report indicated that the death blow was delivered with a blunt object with wood fragments found in the wound. In defendant's confession, he allegedly used a tire iron. This discrepancy may be explained by other nonfatal wounds on the decedent's head and torso, including an egg-shaped injury caused by an instrument that had a cutting edge and star-shaped injuries caused by a noncutting instrument that left a gray-black residue.

■■ Secondly, the autopsy report found no evidence that Miss Regli had engaged in sexual intercourse either immediately before or after death. There was no evidence of trauma, no trace of semen, and she was fully clothed. It should be recalled that the defendant boasted that he sexually assaulted the decedent after her death. While this fact tends to undermine the credibility of the confession, a confession need not be accepted or rejected *in toto*, and the credibility of a confession is for the trier of fact; the jury may accept all, parts, or none of the confession. *People v. DiGerlando* (1964), 30 Ill. 2d 544, 198 N.E.2d 503; *People v. Carter* (1978), 57 Ill. App. 3d 84, 372 N.E.2d 1093.

■■■ In urging this court to find that the jury's decision is not supported by the evidence, we are asked to consider the testimony by two of defendant's friends that established an alibi for the defendant on December 6, 1973. Also, our focus was directed to the testimony by defendant's family that established an alibi for the defendant on November 15, 1978, when the Dixie Inn confessions were allegedly made. As Justice Stengel of this court held in *People v. Shelton* (1975), 33 Ill. App. 3d 871, 875, 338 N.E.2d 585:

> "It [is] the function of the jury to determine the credibility of the alibi witnesses to weigh the totality of the testimony, and their verdict will not be disturbed merely because of conflicting evidence."

Juries may reject uncontradicted alibi witnesses (*People v. Johnson* (1970), 123 Ill. App. 2d 69, 259 N.E.2d 621, *aff'd* (1970), 45 Ill. 2d 501, 259 N.E.2d 796) and those whose testimony is contradicted. (*People v. Shelton.*) The familial ties of the alibi witnesses may bring their veracity under scrutiny such that their testimony may be rejected. (*People v. Davis*

(1977), 53 Ill. App. 3d 424, 368 N.E.2d 721.) In light of these authorities, the jury's decision to reject the testimony of the alibi witnesses in the case at bar must be affirmed, as it was not palpably erroneous.

We find the defendant's confession corroborated by sufficient evidence to support the jury's guilty verdict. Further, the jury's *sub silentio* determination to reject parts of the confession and the alibi testimony is not so manifestly unreasonable as to be subject to reversal upon review.

Defendant suggests that the State's closing argument contained material prejudicial to the defendant which was not based upon evidence in the record. Such argument is clearly improper. (*People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40.) Counsel may comment upon a subject if that subject is proved either by direct evidence or is fairly inferable from facts and circumstances proved. An argument based upon the facts appearing in proof or on the legitimate inferences deducible therefrom is proper. (*People v. Ross* (1978), 63 Ill. App. 3d 884, 380 N.E.2d 897; *People v. Finley* (1978), 63 Ill. App. 3d 95, 379 N.E.2d 645.) Among the comments objected to was the prosecutor's statement that it took more than one individual to subdue the decedent. Defendant's own confession implicated both Mr. Kline and Mr. Schultz, and the report of the pathologist indicated injuries to the decedent which may have resulted from a struggle of some magnitude. Further, the testimony of one of the decedent's friends indicated that she was quite strong and played football with "the guys" at school. All of these factors together provide a substantial factual background in the record for the inference that the prosecutor was asking the jury to make.

The State also argued that the victim's body was dragged by a car at a high rate of speed. Again, there is evidence in the record from which the jury could draw this inference. The pathologist found scratch marks on the decedent's torso and legs which might have been incurred from being dragged along a gravel road. The pathologist also testified that these wounds would not have been incurred if the decedent had been dragged at the rate of speed attainable by a human.

■■ The prosecutor argued to the jury that one of his key witnesses, Ms. Kline, had sold marijuana. Defense counsel objected but was overruled. Defense counsel contends that this was an attempt to minimize the admission of Ms. Kline who actually testified to selling narcotics, not to selling a particular narcotic such as marijuana. While the representation by the State is a misstatement of the evidence, we believe any prejudice to the defendant is so minimal as to be in the category of harmless error. See *People v. Lopez* (1979), 70 Ill. App. 3d 213, 388 N.E.2d 466.

■■ During closing argument, the State alleged that one of the defendant's alibi witnesses admitted being high on marijuana during the crucial time period on December 6, 1973. The record actually shows that the

witness denied at trial that she had previously confessed to being "stoned" at the time in question. However, the State produced a witness who did testify as to the prior inconsistent statement. Again, the difference between being high on marijuana and being "stoned" is not sufficient to warrant a new trial. *People v. Lopez.*

■■ The prosecutor suggested that at the time the decedent entered the light-colored auto she was carrying her books and something else bulky, for example a camera. It is true that in the record there is no evidence that the decedent was carrying a camera at the time. There is evidence that she was carrying something bulky, and there is evidence in the record that she was virtually never without her camera. With these facts before them, it was not improper to ask the jury to infer that the bulky object might have been the omnipresent camera. *People v. Ross; People v. Finley.*

The other closing arguments objected to by defendant must be considered waived as a result of the failure to raise the issue below. (*People v. Jackson* (1980), 84 Ill. App. 3d 172, 405 N.E.2d 448.) Improper argument not objected to below is waived unless it is so prejudicial as to deny the defendant a fair trial or so flagrant as to threaten the deterioration of the judicial process. (*People v. Jackson.*) None of the other objectionable comments quoted in defendant's brief are offensive to that degree.

Before the trial of this cause below, the defense served upon the State a motion for discovery pursuant to which the State provided defense counsel with the current address of Ms. Kline. The defense attempted to interview Ms. Kline at that address and was told she had moved and did not want to be located. Defense counsel presented the court with a specific motion requesting the address of Ms. Kline, and the prosecutor stated that his witness had received a threatening note in the mail and had recently moved to a new address. On Tuesday, August 7, 1979, the trial judge indicated for the record that on the previous Friday he had met with counsel in his office and they had agreed at that time that Ms. Kline would be in the courthouse on a date certain for defense counsel's investigator to interview. In compliance with the judge's order, the State made Ms. Kline available to defense counsel and supplied her new address. At that interview Ms. Kline refused to speak with the defendant's investigator. It is clear that the court has certain express (Ill. Rev. Stat. 1979, ch. 110A, par. 415(d)) and inherent powers to protect witnesses in any judicial proceeding. Whether the procedure followed in the instant case was beyond the scope of the trial court's power is not a question presently before us, as the record reflects that the procedure for interviewing Ms. Kline was with the agreement of all parties. Defendant cannot agree to the procedure in the court below and object to the procedure on appeal. *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95.

■■ Defendant was arrested on December 29, 1978. At a bond reduction hearing on January 3, 1979, with defendant's attorneys present, the court set a preliminary date for February 2, 1979. Subsequently, but before the preliminary hearing date, the State presented evidence to a grand jury and after that jury found probable cause an indictment was returned on January 26, 1979. Defendant contends on appeal that when the prosecutor exercised his discretion and took the question of probable cause to the grand jury, the motive was to deny the defendant the advantage which might accrue at a preliminary hearing from probing for the weaknesses in the State's case. The defendant contends that this unbridled discretion of the prosecutor to choose either a preliminary hearing or a grand jury as the forum to determine probable cause results in a denial of equal protection to those defendants who do not have the opportunity for a preliminary hearing. In support of his position, defendant cites the case of *Hawkins v. Superior Court* (1978), 22 Cal. 3d 584, 586 P.2d 916, 150 Cal. Rptr. 435. The *Hawkins* case was expressly limited to the requirements of article I, section 7 of the California Constitution and is therefore a questionable precedent here in Illinois. Further, the holding in the *Hawkins* case which the dissenting justices describe as "a wholly novel proposition," has been discredited in every jurisdiction which has considered it, including our own State of Illinois. (*People v. Franklin* (1979), 80 Ill. App. 3d 128, 398 N.E.2d 1071; *People v. District Court* (1980), ___ Colo. ___, 610 P.2d 490; *State ex rel. Automotive Emporium, Inc. v. Murchison* (1980), 289 Ore. 265, 611 P.2d 1169; *King v. Venters* (Ky. 1980), 595 S.W.2d 714; *Commonwealth v. Bestwick* (1980), 489 Pa. 603, 414 A.2d 1373; *State ex rel. Rowe v. Ferguson* (1980), ___ W. Va. ___, 268 S.E.2d 45.) The weight of judicial authority has determined that the grand jury and the preliminary hearing are constitutional substitutes that can be interchanged without offending equal protection guarantees.

■■ On direct examination, one of defendant's alibi witnesses, James Roberts, placed the defendant at Mr. Kline's home from the hours of noon until 3 o'clock in the afternoon. The prosecutor attempted to discredit this witness' testimony with the use of prior inconsistent statements. Defendant alleges that this attempted impeachment resulted in two errors, either one of which would entitle the defendant to a new trial. First, defendant believes that the prior statements relied on by the State do not contradict the statements given by the alibi witness on direct examination. We believe they do. The prior statement by the alibi witness indicates that he was elsewhere and with another group of friends from 11 a.m. to 1:30 p.m. and from 2:40 p.m. to 5 p.m. Both of these time periods overlap the time period testified to on direct examination and tend to discredit the alibi witness' recollection as to who he was with and when they were together. Secondly, the defendant believes that he was

entitled to an instruction to the jury which cautioned against considering the impeachment evidence for substantive purposes. It is true that the defendant would have been entitled to such a limiting instruction, but we believe defendant has waived that right by failure to make his request at the trial below. As was pointed out in *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746, the general rule is that the trial court is under no duty to issue a limiting instruction *sua sponte*. (See also *People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400, *cert. denied* (1977), 434 U.S. 839, 54 L. Ed. 2d 102, 98 S. Ct. 133.) As the *Riley* case points out, in some instances a duty does arise for the trial court to issue such an instruction *sua sponte*. That duty exists where the prior statement is extraordinarily long and repetitious such that the conviction becomes based upon unsworn statements by the witness whose credibility is under attack. (*People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689; *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752; and *People v. Bacon* (1971), 2 Ill. App. 3d 324, 276 N.E.2d 782.) In addition, the court's duty may arise where the prosecutor has urged the consideration of the unsworn statement as substantive evidence. (*People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26.) We find no reason to depart here from the general rule of *Riley* and *Sigman*, and believe the failure to request a limiting instruction waives that issue for purposes of this appeal.

■■ At the Dixie Inn, the defendant vaunted that Miss Regli had been slain because she photographed the defendant as he was engaged in a drug transaction. It was the State's theory that the defendant's motive for the murder was the cover-up of a crime. At trial the State elicited evidence that the defendant dealt in narcotics and went to Dolton, Illinois, on the morning of the murder to purchase marijuana. We are asked to reverse the defendant's conviction because this evidence of other criminal activity was heard by the jury. The Illinois Supreme Court recently set forth the Illinois rule on the admissibility of evidence of collateral crime.

> "Evidence of collateral crimes, *i.e.*, crimes for which the defendant is not on trial, is inadmissible if relevant merely to establish the defendant's propensity to commit crimes. [Citations.] Such evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment. * * *
>
> * * * Our prior decisions have deemed other-crimes evidence admissible if relevant to demonstrate knowledge, intent, motive, design, plan or identification." (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.)

Although the evidence of collateral crimes in the *Lindgren* case did not fall within one of the settled exceptions to the general rule, we believe the

734

evidence in the instant case does fall within the motive exception. As such, the complained of evidence was admissible and no error was committed below.

■■ Prior to trial defendant filed a motion for production pursuant to Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412). The purpose of this motion was to enable the defendant to conduct tests on the previously mentioned hair samples which were then in the State's possession. The court allowed defendant's motion with the provision that the defense counsel and the prosecutor would jointly arrange for the transfer of the hair samples. When the State insisted on sending the samples directly to a laboratory of the defendant's choice, the defendant filed a motion to suppress the hair sample evidence based on what the defendant thought was the State's failure to comply with a prior order. In a hearing that followed, the court denied the defendant's motion to suppress and required that the State be allowed to deliver the samples to a laboratory of defendant's choice and that the State be given a copy of all test results whether or not they were to be used at trial. Defendant now contends that this order violated the rules for discovery and infringed on the defendant's fifth amendment right to silence. There can be no question that the defendant has a constitutional right to conduct his own tests on physical evidence. (*Miller v. Pate* (1967), 386 U.S. 1, 17 L. Ed. 2d 690, 87 S. Ct. 785.) The right to independent testing is not without limitations. The State has an interest in preserving its evidence and insuring that physical evidence is admissible after introduction of appropriate foundation testimony. Both of these State interests can be served while still allowing the defendant his right to inspect and test physical evidence. For that reason our court rules do not require an absolute transfer of custody but merely an availability that reasonably affords the defendant an opportunity to prepare his defense. Ill. Rev. Stat. 1979, ch. 110A, par. 412(E).

■■ Our court rules further require that the defendant in a criminal proceeding may be required to inform the State of medical and scientific reports. (Ill. Rev. Stat. 1979, ch. 110A, par. 413(C).) This rule is subject to constitutional limitations, but the privilege against self-incrimination protects an accused only from being compelled to testify against himself or from otherwise providing the State with evidence of a testimonial or a communicative nature. (14A Ill. L. & Prac. *Criminal Law* §276 (1968).) The privilege of the accused is personal and does not extend to others. The discovery order of the court below does not ask the accused to communicate any information to the State. For that reason, assertion of the privilege is not appropriate in these circumstances. *People v. Green* (1973), 14 Ill. App. 3d 972, 304 N.E.2d 32, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3179.

■■ On January 3, 1979, the defendant appeared in court with his attorneys pursuant to a motion to reduce bond. At that time the court set a preliminary hearing date for February 2, 1979. As we previously set forth in this opinion, the defendant was indicted by the grand jury on January 26, 1979. The defendant urges us to find that this sequence of events, and the delay in the return of the grand jury indictment, constitutes a violation of article I, section 7, of the 1970 Constitution of Illinois. That section specifically reads:

"No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a Grand Jury or the person has been given a prompt preliminary hearing to establish probable cause."

Denial of this right to prompt hearing has been held to justify an outright reversal in at least one reported case, *People v. Kirkley* (1978), 60 Ill. App. 3d 746, 377 N.E.2d 540. We find it unnecessary to determine whether the delay in this case would have been sufficient to warrant the remedy of reversal provided for in the *Kirkley* case. Our determination is based on the supreme court decision in *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403. In that case, the supreme court held that the defendant was precluded from raising the question of undue delay because of his failure to present the issue to the trial court. The facts in the instant case are similar. Here, the defendant and his attorneys were present on January 3, 1979, when the date for the preliminary hearing was selected. No objection of any kind appears in the record and no motion was filed at that time. We must rely on those matters which appear of record and in so doing, we must conclude that the defendant and his counsel acquiesced in the hearing date which was selected.

Several years after Miss Regli's body was discovered, police officers were called to the home of Glen Schultz, Jr. When they arrived Glen Schultz told the officers, in the presence of his father and brother, that he had killed "the brunette" in Crete and that he wanted to be taken to a mental hospital. The Schultz confession does not absolve the defendant in the instant case from criminal liability, but neither does it specifically implicate him. At the trial below the defendant sought to have the testimony of the police officers admitted into evidence regarding the confession which had been made by Mr. Schultz. In reliance on our recent opinion in *People v. Foster* (1978), 66 Ill. App. 3d 292, 383 N.E.2d 788, evidence of the Schultz admission was not admitted. In *Foster* we said:

"* * * that declarations against penal interest are inadmissible because of the hearsay rule unless justice demands a departure from the rule. The rationale for excluding hearsay of all types from the

courtroom is, of course, that it fails to meet the standard of reliability that we seek in the adjudicatory process." (66 Ill. App. 3d 292, 294, 383 N.E.2d 788, 789.)

Our opinion in *Foster* held that where certain factors are present to assure the reliability of hearsay declarations, then those declarations could be admitted into evidence. The four factors are:

"(1) [T]he declaration was made to an acquaintance shortly after the crime occurred; (2) the declaration was corroborated by other evidence in the case; (3) the declaration was self-incriminatory and against the declarant's interest; (4) declarant is available for cross-examination by the State." (66 Ill. App. 3d 292, 294, 383 N.E.2d 788, 780.)

Several cases were cited in the *Foster* opinion which denied admissibility to a declaration against penal interest in the absence of just one of the four enumerated factors. We find absent from the facts of the case at bar two of the four factors previously set forth.

■■ The Schultz admission was not made shortly after the crime occurred, but several years after the crime occurred. Secondly, it was not made to a close acquaintance but rather it was made to police officers. Finally, the declarant, Mr. Schultz, is not available for cross-examination by the State. Mr. Schultz is under indictment for the murder of Miss Regli, and he has not yet been tried. It would be unreasonable to suggest that Mr. Schultz was available for cross-examination because he would clearly be entitled to rely on his rights against self-incrimination. (*People v. Kirkpatrick* (1979), 70 Ill. App. 3d 166, 387 N.E.2d 1284.) In light of these several factors which tend to denigrate the reliability of this declaration against penal interest, we do not believe that the trial court erred in denying its admission.

In the proceeding below the defendant attempted to introduce the expert testimony of Dr. Shaw regarding the defendant's ability to ejaculate and produce sperm. The court refused to admit the evidence based on relevancy grounds. The defendant believes that this testimony was relevant and if introduced, would have tended to undermine the credibility of the Dixie Inn confession as that confession was related to the court by Ms. Kline and Ms. Wooten. In the Dixie Inn statement the defendant allegedly confessed to sexually assaulting the decedent after slaying her. Upon discovering Miss Regli's body, however, the sheriff's deputies found that the decedent was completely clothed. Further, the pathologist testified that he found no trace of trauma to the vaginal or anal areas of the decedent, and no presence of sperm or semen in the decedent's vagina, rectum, or mouth. This represented very persuasive evidence that no sexual assault occurred. We can only conclude that the jury elected to

believe the defendant's confession insofar as he admitted slaying Miss Regli, while disbelieving that portion of the confession in which the defendant admitted a sexual assault. The jury is permitted to accept a confession in part. *People v. DiGerlando*; *People v. Carter*.

■■ We agree with the defendant that the testimony of Dr. Shaw would have been relevant to the issue of the veracity of his confession. If Dr. Shaw's testimony had been the only evidence which tended to cast doubt on the sexual assault portion of defendant's confession, to deny its admission would have constituted reversible error. However, in light of the considerable evidence which was admitted that tended to negative the possibility of a sexual assault, we believe that the verdict would have been the same had Dr. Shaw been allowed to testify. Dr. Shaw's testimony was essentially cumulative. Like the testimony of the pathologist and the sheriff's deputies, it would have discounted the possibility of a sexual assault. It would have added little to the considerable evidence on that point already in the record. Where relevant evidence that was denied admission is purely cumulative, the result is harmless error and will not require a reversal and remand for a new trial. *People v. Rice* (1970), 122 Ill. App. 2d 329, 258 N.E.2d 841.

■■ On appeal the defendant objects that the trial court improperly limited the scope of his cross-examination of Ms. Wooten. In one instance, as demonstrated by the offer of proof set forth in the record, the defendant sought to elicit testimony from Ms. Wooten that the State's other principal witness, Ms. Kline, had been dishonest on a prior occasion. It is permissible to show that a witness in a criminal case has a bad reputation for truth and veracity. It is not permissible to reflect on a witness' credibility by establishing that on a former occasion that witness lied about a totally unrelated matter. (*People v. Smith* (1974), 21 Ill. App. 3d 366, 316 N.E.2d 170.) In the instant case, it was not error for the trial court to refuse to admit evidence on a specific example of dishonesty. On another occasion, again as shown by an offer of proof set forth in the record, the defendant sought to elicit from Ms. Wooten the existence of hostility between herself and Ms. Kline. Evidence that a witness is hostile toward the defendant is clearly relevant to the issue of that witness' credibility and therefore admissible. (*Blanchard v. Blanchard* (1901), 191 Ill. 450, 61 N.E. 481.) Where the witness' hostility is not directed toward the party against whom that challenged witness testifies, there cannot be said to exist an inclination toward bias that would be relevant to the matter before the court. (*Blanchard v. Blanchard.*) While the widest latitude should be allowed the defendant in cross-examining for the purpose of establishing bias (*People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700), that latitude is not unbounded. Every inquiry must be relevant. We

do not believe the record reflects any error by the trial court as a result of the limitations imposed on the cross-examination of Ms. Wooten by the defendant.

Finally, the defendant has asked us to review the possibility that prejudicial publicity tainted the verdict of the jury reached in the circuit court below. Moreover, defendant believes that his burden in presenting the record of this taint was wrongly compounded by the decision of the trial court in denying a court reporter during the voir dire proceedings that occurred below. In circumstances where the defendant has expressly requested the presence of a court reporter and that request is denied, we would be obliged to find on behalf of the defendant with regard to any alleged errors which could have been proven with a proper record. In the case *sub judice*, the defendant points to no rulings or decisions of the trial court by which he was prejudiced during the voir dire proceedings. All but one of the veniremen who were challenged for cause by the defendant were excused by the trial court. Defendant's objection to that single challenged but unexcused venireman was later withdrawn. In short, there is nothing which a complete transcript of proceedings could show upon which the defendant could now rely to assert an error not previously waived.

■■ The record contains newspaper stories concerning this trial and the trial of Mr. Kline which may indeed be prejudicial to defendant's case. In response to the defendant's concern about the possible impact of this publicity, the court admonished the jurors not to read newspaper articles about the trial. The trial judge is entitled to rely on the efficacy of such admonishments (*People v. Evans* (1976), 41 Ill. App. 3d 15, 353 N.E.2d 264), and defendant has presented no reason to suggest that the admonishments were not obeyed. Since the defendant was not denied any challenge for cause, there is a strong indication that he was satisfied as to the impartiality of the jury, at least at the outset of his trial. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) The verdict of the jury after hearing the evidence does not *ipso facto* establish the impartiality of the jury at the commencement of the trial.

Having reviewed the record and considered the several alleged errors set forth in defendant's brief, and for the reasons and based upon the authorities above set forth, we believe the decision of the Circuit Court of Will County should be affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.