THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER HOWARD, Defendant-Appellant.

Third District   No. 82—79

Opinion filed March 16, 1983.

BARRY, P.J., dissenting.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Rita K. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The defendant, Roger Howard, was charged with five counts of taking indecent liberties with a child, two counts of battery and one count of resisting a peace officer. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—4(a)(3), 12—3(a)(1), and 31—1, respectively.) After a jury trial in the circuit court of Fulton County, the defendant was convicted on all counts except one count of battery. He was sentenced to four-year terms of probation on each of the five indecent liberties convictions, with the first 120 days to be served in the county jail. The defendant was also sentenced to a one-year term of probation on each misde-meanor conviction, with the first 120 days in the county jail. All sen-tences were to run concurrently with one another.

The complaining witness for the State was the defendant's stepdaughter, Lisa Reedy. At the time of the trial she was 15 years old, having been 14 years old when the incidents occurred. Lisa testified that on Easter Sunday morning, April 19, 1981, she was in the front room of her house and the defendant was sitting in a nearby chair. He told Lisa to sit on his lap. When she complied, the defendant placed his hand inside her underpants. The defendant explained that he wanted to see if Lisa was "a good girl or a bad girl," and he fondled her vagina. Although Lisa told him no, he did not stop until Lisa's brother, Clifford Howard, entered the room. After this episode, the defendant went into his bedroom and told his wife, Lisa's mother, Delila Howard, what had occurred.

Lisa testified to a second incident on July 11, 1981. The defendant had awakened her at about 6:30 a.m. He picked Lisa up off the floor of her bedroom, which she shared with her three brothers and one sister, and then dropped Lisa on the floor when she tried to get free. The defendant left the room but returned. He told Lisa to take her younger brother to the bathroom, which she did. On her way back to the bedroom, the defendant stopped her in the kitchen. Once again he told Lisa to sit on his lap, and he fondled her vagina. When he finished, the defendant told his wife what happened.

On July 17, 1981, Lisa was outside of the house when the defendant asked her to come into the garage. The defendant leaned Lisa against some tires and began kissing her. He also rubbed the outside of her pants around the vagina area. Lisa broke away and went into the house. Lisa said that her younger brother, Carl Reedy, was around the garage at the time. However, when Carl Reedy testified for the defense, he claimed that he did not see the defendant doing anything to Lisa.

Lisa described a fourth incident with the defendant which occurred on July 19, 1981, at about 3:30 a.m. The defendant came into Lisa's bedroom and awakened her. He had been drinking. She was told to go into her parents' bedroom so her parents could talk to her. When Lisa was seated on their bed, the defendant asked her why she had been lying to her mother concerning the defendant's sexual advances. Lisa said she had not been lying. The defendant pushed Lisa and struck her. After some further conversation, the defendant told Lisa, "Well, I ought to just screw you and get it over with. It's what you want." Then he pulled off Lisa's underpants, tearing them in the process, and inserted his finger into her vagina. When Lisa's mother attempted to intervene, the defendant pushed her back on the bed. Afterwards, Lisa went to her room to go to sleep.

At approximately 7:30 a.m. on July 19, 1981, the defendant and Lisa were in the kitchen together. He fondled her and inserted his finger in her vagina. Lisa screamed and ran into her bedroom. She climbed into the upper bunk bed with her older brother, Jeff Reedy. The defendant came into the room and pulled her out of bed onto the floor. He told his wife to get Lisa out of the house. Jeff then ran outside the house, and the defendant sent his wife after him. Lisa joined her mother.

Lisa testified further that she and her mother went to a neighbors' house, the Sipes, to call the police. Lisa was telling her story to a police officer when the defendant arrived on the Sipes' porch. The defendant was telling his wife to come outside so that he could talk to her. Other police officers arrived and instructed the defendant to stay. The defendant, however, did not obey them and began to walk away. He had to be apprehended by both officers and handcuffed.

After returning home to change her clothing, Lisa went to a hospital where she was examined by a doctor. From the hospital, she went to make a statement to the police.

The complaining witness' older brother, Jeff Reedy, testified for the State. He corroborated Lisa's testimony as to some of the facts of July 11, 1981, and July 19, 1981. Jeff said that on July 11, 1981, he woke up and heard the defendant lifting Lisa off the floor. He heard her start to cry at which point the defendant dropped her. After Lisa took their brother to the bathroom, Jeff heard the defendant from the kitchen say "Do it," and heard Lisa say "No." He then heard a sound like a slap.

As to the events of July 19, 1981, Jeff testified that he was awakened when Lisa jumped into the upper bunk bed with him. She was crying and screaming. The defendant came into the room and pulled Lisa off the bed, dropping her to the floor. Jeff stated that the defendant was kicking her and telling Delila Howard to get Lisa out of the house before the defendant killed her.

The doctor who examined Lisa on July 19, 1981, Dr. Mohammed Dowlut, testified for the State. He explained that a total pelvic examination was not performed because there was no report of intercourse. However, he described the outer vaginal area as moderately red which could have been caused by various factors, including rubbing.

The State also submitted into evidence a pair of Lisa's underpants. These were torn and described as the pair Lisa wore on July 19, 1981.

The first witness for the defense was the complaining witness' mother, Delila Howard. She denied any knowledge of the defendant's

sexual advances toward her daughter until July 18, 1981. Delila claimed that she never witnessed any such activity. Although she admitted that she had made previous statements to the police and the State's Attorney which confirmed Lisa's testimony, Delila said that she had lied then. She claimed to have fabricated the previous statements with Lisa because at first she believed her daughter. Delila also said she lied in order to send the defendant to jail and secure a divorce from him. She no longer felt that way, however, and was now telling the truth to the jury. Delila also accused her daughter of lying in her testimony.

Lisa Howard's 14-year-old brother, Carl Reedy, was a defense witness. He testified that on July 18, 1981, while his parents were out, he saw Lisa and Jeff Reedy lying on the floor when he got up to use the bathroom. Both of them were naked and Jeff was inserting his finger into Lisa's vagina. Carl went back to bed but did not tell anyone of the incident. He said Jeff threatened him so he would not say anything. Carl did not tell anyone until he moved back with the defendant sometime after the defendant's release on these charges. Lisa and Jeff denied Carl's story during testimony. They both gave a similar description of the evening of July 18, 1981, which sharply contrasted with Carl's.

The defendant testified on his own behalf. He denied the allegations made by Lisa and claimed he never made any sexual advances to her. The defendant testified that in the early morning hours of July 19, 1981, Lisa, Delila Howard, and he discussed the lies Lisa was telling about these incidents. The defendant also admitted to hitting Lisa. As to the incident later that morning, the defendant claimed he was merely coming out of the bathroom when Lisa began screaming. She ran into her room and climbed in bed with Jeff. The defendant's account of the rest of the story was similar to those of the other witnesses.

One other witness was called by the defense but the court ruled her testimony inadmissible. The defendant, however, made an offer of proof outside the presence of the jury.

Wilda Decker would have testified to a conversation she had with Lisa Ready about 1½ years ago. Apparently at that time, Delila Howard and her children went to stay with Decker for two to three days. Delila left the defendant because Lisa said the defendant had made sexual advances towards her. Decker asked Lisa if she was telling the truth about the defendant. Lisa informed Decker that she had lied in order to separate her parents. Lisa did not want her mother living with the defendant because he disciplined the children too

much. Decker also stated that she had been the defendant's girlfriend in the time between this incident and the trial.

Lisa testified that she did not like living with the defendant because he made her work around the house but would not let her go out. She also claimed he was "mean" to her. She denied, however, having a conversation with Wilda Decker.

The first issue the defendant raises is whether he was convicted by proof establishing his guilt beyond a reasonable doubt. In order to establish guilt beyond a reasonable doubt in cases of this sort, the complaining witness' testimony must be corroborated or clear and convincing. (*People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063.) The credibility of the complaining witness, of course, is a question for the trier of fact. In this case, the testimony of the State's witnesses, if believed, would be sufficient to establish guilt beyond a reasonable doubt.

The fact that the State's evidence is sufficient to establish guilt beyond a reasonable doubt does not, however, end our inquiry in this appeal. This court cannot normally overturn findings of fact made by a jury. This court does have a duty, though, to insure that all relevant facts were properly placed before the jury.

In this regard, the defendant argues the trial court erred when it refused to admit the testimony of Wilda Decker. This testimony, the defendant contends, would establish Reedy's bias or prejudice against the defendant and prove the motive to testify falsely. We agree with the defendant and reverse this cause for a new trial.

A showing of bias or motive to testify falsely is an accepted method of impeaching a witness. (*People v. Lenard* (1979), 79 Ill. App. 3d 1046, 398 N.E.2d 1054.) Moreover, a court should allow a criminal defendant wide latitude to establish bias, prejudice or a motive to testify falsely. (See *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708 (court should give defendant wide latitude on cross-examination to establish bias). See also *People v. Lenard* (refusal to admit evidence or permit cross-examination of State's witnesses to establish motive to testify falsely was error).) This wide latitude is particularly important where—as in the case at bar—the State's case rests almost entirely on the credibility of its witnesses. The evidence of bias, of course, must be direct and positive.

In this case, Decker's testimony would have had a direct and positive bearing on the credibility of the complaining witness. Decker's testimony would have revealed that Reedy made similar charges against the defendant 1½ years prior to the incidents in question here. Decker's testimony also would have revealed that Reedy fabri-

cated those prior charges in an effort to persuade her mother to divorce the defendant. Additionally, Reedy openly admitted, in her testimony, that she did not like her stepfather because he insisted upon Reedy doing housework and would not allow her to go out at night. Significantly, the same motive to fabricate her testimony at trial may have existed a year and a half earlier. Decker's testimony would have demonstrated that Reedy engaged in a persistent pattern of conduct in an effort to separate her mother from the defendant—either by causing a divorce or by causing the latter's imprisonment. Decker's testimony, if believed by the jury, could have been a substantial and important element in proving Reedy's bias and motive to lie.

The State's reliance on *People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328, indicates it is confused about the issue in this appeal. In *Garza*, this court ruled that it is impermissible to challenge a witness' credibility by establishing that on a former occasion he lied about a totally unrelated matter. In contrast, the issue here is whether the witness can be impeached by showing bias, prejudice, hostility or motive to testify falsely. Although the evidence of this bias is a pattern of untruths, nevertheless the issue remains whether the defendant should be permitted to show prejudice or motive to testify falsely. More particularly, Reedy's statements a year and a half prior to trial, if established, under a parallel set of circumstances, combined with the same motive to lie on both occasions, cannot be characterized as "totally unrelated" to the criminal charge. In fact, *Garza* noted that evidence of a witness' hostility towards the defendant is clearly relevant to that witness' credibility and admissible for impeachment.

■ For these reasons, the trial court erred when it refused to admit Decker's testimony. Even if the State's evidence is sufficient to establish guilt beyond a reasonable doubt, the defendant must be permitted to adequately challenge that evidence. The credibility of the complaining witness here was directly in issue and the defendant should have had an opportunity to fully challenge that credibility.

The judgment of the circuit court of Fulton County is reversed and the cause remanded for a new trial.

HEIPLE, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

I cannot agree that reversible error occurred here. This is not a case wherein the defendant was improperly limited in his cross-examination of the State's witnesses, as in *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526, *People v. Lenard* (1979), 79 Ill. App. 3d

1046, 398 N.E.2d 1054, *People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53, and *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708. Instead, what we are here obligated to determine is whether the trial judge abused his discretion in refusing the testimony of an additional defense witness, Wilda Decker.

The evidence of witness Decker was offered in an attempt to show that the complaining witness had a motive for lying, *i.e.*, to cause her mother and stepfather to separate or divorce. The incident to which Decker would have testified, as disclosed by the offer of proof, happened 1½ years prior to the crimes charged here. It is axiomatic that it is within the discretion of the trial court to exclude evidence offered by the defense in a criminal case without infringing upon the accused's constitutional right to present a defense when the relevancy of the evidence is so speculative as to give the evidence little probative value. (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550.) Judge Wilhelm denied the defense motion to permit Decker's testimony ruling that it was totally remote in time and place and irrelevant. Given all the circumstances of this case, including that the alleged activity of a former day was not here charged, including the length of time that had passed and the fact that Decker admitted she was now the defendant's girlfriend, I would not say the trial court abused its discretion in excluding Decker's testimony. Further, there was nothing to indicate that the complaining witness continued to want the separation of her mother and stepfather up to the time of these incidents. (*Cf. People v. Moretti* (1955), 6 Ill. 2d 494, 522, 129 N.E.2d 709, 725.) It should also be noted that Decker's evidence would have been cumulative at best. The mother of the complaining witness had already testified to the earlier incident, and the complaining witness admitted that she wanted out of the house and was glad that she was no longer living in the same house with her stepfather, and that she in fact hated him.

Furthermore, the complaining witness was thoroughly cross-examined, and her testimony was convincing and unwaivering. Her disclosures were supported by the immediate reporting to the police by her and her mother and the results of an immediate examination by Dr. Dowlut who found abrasions and scratches on her right shoulder, redness in the vaginal area and torn underclothing. Her testimony was corroborated by her brother Jeff and the defendant's own admissions regarding contemporaneous occurrences.

I would find that the trial judge did not abuse his discretion, that the defendant got a fair trial and that he was properly found guilty beyond a reasonable doubt.